[No. 77723-3.   En Banc.]
Argued June 15, 2006.    Decided November 16, 2006.

THE CITY OF SPOKANE, *Appellant*, v. SPOKANE COUNTY ET AL., *Respondents.*

James Craven, City Attorney, and Howard F. Delaney and Salvatore J. Faggiano, Assistants, for appellant.

Steven J. Tucker, Prosecuting Attorney, and James H. Kaufman, Deputy; Carl E. Hueber (of Winston & Cashatt, Lawyers, P.C.); and Robert M. McKenna, Attorney General, and Laurence D. Briney, Jr., Senior Assistant, for respondents.

Daniel B. Heid on behalf of Washington State Association of Municipal Attorneys, amicus curiae.

¶1 BRIDGE, J. — The city of Spokane (City) currently operates its municipal court as a department of the Spokane County District Court (District Court) pursuant to chapter 3.46 RCW. The City seeks to terminate this arrangement and open its own independent municipal court pursuant to chapter 3.50 RCW. RCW 3.46.150(1) requires that before a city can give notice that it intends to terminate a district court municipal department, the city and county must enter into an agreement to provide for some of the costs resulting from the termination. This case involves

several issues surrounding the City's proposed transfer to an independent municipal court, including what costs must be covered by the required agreement, whether the agreement in this case is sufficient to satisfy the statute, to what extent the presiding judge of the district court must participate in a transfer agreement, and which court must assume jurisdiction over open cases upon termination of the municipal department.

¶2 We hold that RCW 3.46.150(1) requires only that a city agree to pay for the costs of criminal cases that will be filed in district court as a result of the termination of a municipal department. The agreement between the City and Spokane County (County) in this case satisfies that requirement. We also hold that municipal cases open on the date that the municipal department is terminated must be transferred to the new independent municipal court. Accordingly, we reverse the superior court.

I

Statement of Facts and Procedural History

¶3 Currently, the City operates its municipal court as a department of the District Court pursuant to chapter 3.46 RCW. In November 2004, the mayor of Spokane notified the commissioners of the County that the City intended to create an independent Spokane municipal court pursuant to chapter 3.50 RCW, effective January 1, 2007.[1] The City would therefore terminate the existing municipal department of the District Court on December 31, 2006. In the course of meetings discussing the transfer, disagreement arose as to what would happen to cases pending in the municipal department, subsequent proceedings in cases already adjudicated in the municipal department, and cases on probation (hereinafter "open cases"). The City's

---

[1] At some point, counsel for the County pointed out that the creation of a municipal court is a legislative function and thus the change must be initiated by the City council, not the mayor. Accordingly, the City council entered into negotiations with the County council to facilitate the transfer.

position was that all open cases would be transferred to the new municipal court. The District Court, however, believed open municipal cases would have to remain under the jurisdiction of the District Court and the City would have to continue to pay the County to handle those cases until all were disposed of.

¶4 RCW 3.46.150(1) sets forth requirements for termination of the municipal department of a district court. It provides:

> Any city, having established a municipal department as provided in this chapter may, by written notice to the county legislative authority not less than one year prior to February 1st of the year in which all district court judges are subject to election, require the termination of the municipal department created pursuant to this chapter. A city may terminate a municipal department only at the end of a four-year judicial term. However, *the city may not give the written notice required by this section unless the city has reached an agreement with the county under chapter 39.34 RCW [the Interlocal Cooperation Act] under which the county is to be paid a reasonable amount for costs associated with prosecution, adjudication, and sentencing in criminal cases filed in district court as a result of the termination.* The agreement shall provide for periodic review and renewal of the terms of the agreement. If the municipality and the county are unable to agree on the terms for renewal of the agreement, they shall be deemed to have entered into an agreement to submit the issue to arbitration under chapter 7.04A RCW. Pending conclusion of the arbitration proceeding, the terms of the agreement shall remain in effect.

RCW 3.46.150(1). Thus, as a statutory prerequisite to termination of a municipal department, a city and county must enter into an agreement dealing with the costs associated with criminal cases "filed in district court as a result of the termination." *Id.*

¶5 Accordingly, the City and County entered into a transfer agreement for the purpose of satisfying the statutory prerequisite. The City and County agreed that effective January 1, 2007, all municipal criminal cases, civil infraction cases, and parking infraction cases filed on or after that

date would be filed, administered, and adjudicated in the new City of Spokane Municipal Court. With regard to cases open on that date, the agreement provided:

> The CITY proposes that all criminal causes occurring within the City of Spokane prior to January 1, 2007, and filed in the Spokane County District Court prior to January 1, 2007, but which have not been adjudicated prior to January 1, 2007, including related warrants thereto (hereinafter referred to in this subsection as "criminal causes"), [and all subsequent proceedings in criminal causes adjudicated prior to January 1, 2007] shall be taken under authority of . . . the new chapter 3.50 RCW City of Spokane Municipal Court for administration and adjudication effective January 1, 2007.

> The COUNTY maintains that whether or not these criminal causes can be transferred is a legal issue having to do with the jurisdiction of the Spokane County District Court and new chapter 3.50 RCW City of Spokane Municipal Court. The COUNTY also believes that the transfer of these criminal causes as proposed by the CITY directly affects the administration and management of the Spokane County District Court. The Spokane County District Court is not a party to this Agreement. The COUNTY maintains it lacks the legal authority to independently negotiate or agree with the CITY's proposal on this matter. In the event it is determined with finality by [a] court of competent jurisdiction that the CITY's proposal to transfer criminal causes as provided for herein is not legally possible, the CITY agrees to immediately meet with the COUNTY and Spokane County District Court (for matters, if any, within its control as provided for under GR 29) to negotiate an agreement as required by RCW 3.46.150.

Clerk's Papers (CP) at 22. The agreement contained identical language with regard to civil infraction cases and parking infraction cases, and similar language regarding the transfer of probation files and other municipal department files.[2]

---

[2] The agreement also allowed the parties to negotiate necessary prisoner transfers in a separate interlocal agreement. The agreement required the City to assume responsibility for providing space, equipment, and supplies for its new court. The agreement also provided for the transfer of electronic databases and equipment.

¶6 With regard to transfer *costs*, the agreement provided:

The CITY believes that there are no costs associated with criminal case filing, administration and adjudication in criminal cases [discussed above]. The COUNTY's position is set forth [above]. The Parties, however, shall continue negotiations and meetings to review any COUNTY or Spokane County District Court (to the extent it desires to participate in such meetings) proposed associated costs. If the Parties are unable to reach an agreement relating to these costs, the matter shall be referred to arbitration.

CP at 29. The agreement then set forth a time line for arbitration. It contained identical language with regard to transfer costs for infraction cases and parking cases.

¶7 The City also agreed to assume any and all costs for the transfer of probation files and other municipal court files to the new court. Furthermore, the agreement recognized that there may be transitional costs for informal and formal training of the new City of Spokane Municipal Court by current District Court judges and employees. That section of the agreement again stated that the County believed it would be unable to independently negotiate this issue without the District Court's representative. However, the County agreed to meet with the City and District Court to address these issues. Finally, the City stated that it did not intend to repeal any city ordinance but, even so, agreed that if it were to do so, it would negotiate for the payment of resulting costs.

¶8 The agreement contained a severability clause that states, "[i]n the event any portion of this Agreement should become invalid or unenforceable, the rest of the Agreement shall remain in full force and effect." CP at 35. Finally, with regard to the joint city/county domestic violence program, the agreement provided that "[t]he Parties agree to take all reasonably necessary actions to maintain and not jeopardize current grant funding." CP at 36.

¶9 Despite the agreement, there has been no arbitration as to transfer costs. In April 2005, the City filed a complaint

in Spokane County Superior Court against both the County and the District Court, seeking declaratory judgment that all municipal cases pending or on probation on the date of termination of the municipal department be transferred to the new independent municipal court created under chapter 3.50 RCW. In response, the District Court asserted that such cases should be "subject to the continued jurisdiction of the Spokane County District Court and may not be transferred by legislative action in contravention of GR 29." CP at 42-43. The District Court also sought declaratory judgment that the transfer agreement in this case was null and void because it failed to comply with RCW 3.46.150 and because it interfered with the management and administration of the District Court in violation of GR 29. The District Court argued that it must be a party to any transfer agreement. The County argued that the District Court lacked standing to challenge the validity of the transfer agreement and sought declaratory judgment that the transfer agreement was valid in all respects. All three parties moved for summary judgment.

¶10 The trial court granted the District Court's motion for summary judgment and denied the City's and County's motions for summary judgment. In doing so, the court read RCW 3.46.150 as a whole to require a transfer agreement to provide for *all* costs arising as a result of the termination of the municipal department. The court concluded that the transfer agreement between the City and the County was only an agreement to try to agree in the future and it was therefore invalid. Alternatively, the court harmonized RCW 3.46.150 and GR 29 by concluding that the District Court presiding judge must be a party to any transfer agreement. Without the presiding judge's participation, the transfer agreement was invalid. Because there was no valid transfer agreement and because a valid agreement was a prerequisite to valid notice, the notice to the County of the City's intention to terminate the municipal department of the District Court was invalid. The trial court also ruled that when a municipal department is terminated, the legisla-

ture intended all open municipal department cases to remain under the jurisdiction of the district court where they were originally filed. Because the trial court could harmonize GR 29 and RCW 3.46.150, the court found it unnecessary to address whether the statute or the rule violated separation of powers by improperly infringing on either legislative or judicial powers.

¶11 The practical result of the trial court's ruling was that the City missed its window for giving valid notice of its intent to create its own independent municipal court. *See* RCW 3.46.150(1). The City petitioned for direct review in this court, which the District Court supported. We granted direct review.

II

Analysis

¶12 This case first requires us to examine to what extent a transfer agreement is necessary to support creation of a new city municipal court under RCW 3.46.150(1) and whether the agreement in this case meets the statutory prerequisite for adequate notice of termination.

¶13 *Standard of Review.* We review summary judgment de novo, engaging in the same inquiry as the trial court and viewing the facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Berrocal v. Fernandez,* 155 Wn.2d 585, 590, 121 P.3d 82 (2005). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing CR 56(c)).

¶14 *Statutory Prerequisite for Termination of a Municipal Department.* Under the Washington Constitution, the legislature has the sole authority to prescribe the jurisdiction and powers of district and municipal courts. *See* WASH. CONST. art. IV, § 12; *Exendine v. City of Sammamish,* 127 Wn. App. 574, 580, 113 P.3d 494 (2005). The legislature has provided that each county, city, and town is responsible for

the prosecution, adjudication, sentencing, and incarceration of misdemeanors and gross misdemeanors committed by adults in their respective jurisdictions, whether filed under state law or city ordinance. RCW 39.34.180(1). A city must carry out these responsibilities through the use of its own court, staff, and facilities, or by entering into an interlocal agreement to provide these services. *Id.* A city can create an independent municipal court, chapter 3.50 RCW, establish a municipal department of the county's district court, chapter 3.46 RCW, or enter into an agreement with the district court to hear criminal and other cases. *Exendine*, 127 Wn. App. at 581.

¶15 As an initial matter, the City argues that RCW 3.46.150(1), which provides prerequisites to the termination of a municipal department in a district court, only requires an agreement as to the payment of a very limited set of costs. The relevant portion of RCW 3.46.150(1) provides that valid notice cannot occur "unless the city has reached an agreement with the county under chapter 39.34 RCW under which the county is to be paid a reasonable amount for costs associated with prosecution, adjudication, and sentencing in criminal cases filed in district court as a result of the termination." RCW 3.46.150(1). The trial court read this sentence of the statute such that the clause " 'as a result of the termination' " modified " 'costs,' " Report of Proceedings (RP) at 3 (quoting RCW 3.46.150(1)), not "criminal cases filed in district court." RCW 3.46.150(1). The District Court's arguments also assume that the statute requires an agreement as to *all* costs of termination. In contrast, the City asserts that while the City and County may choose to come to an agreement with regard to other costs, the statute requires only an agreement as to costs associated with criminal cases filed in district court because of the termination. RCW 3.46.150(1). Under the City's reasoning, "as a result of the termination" modifies "cases filed," rather than "costs."

¶16 Statutory interpretation is a question of law, subject to de novo review. *E.g.*, *City of Olympia v. Drebick*,

156 Wn.2d 289, 295, 126 P.3d 802 (2006). Our purpose when interpreting a statute is to " 'discern and implement the intent of the legislature.' " *Id.* at 295 (quoting *State v. J.P.,* 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). Where the meaning of statutory language is plain on its face, we must give effect to that plain meaning as an expression of legislative intent. *Id.* In discerning the plain meaning of a provision, we consider the entire statute in which the provision is found, as well as related statutes or other provisions in the same act that disclose legislative intent. *Id.*; *Advanced Silicon Materials, L.L.C. v. Grant County,* 156 Wn.2d 84, 89-90, 124 P.3d 294 (2005); *Ellerman v. Centerpoint Prepress, Inc.,* 143 Wn.2d 514, 519, 22 P.3d 795 (2001). When a statute is ambiguous, we then resort to aids of construction, including legislative history. *Drebick,* 156 Wn.2d at 295; *Advanced Silicon,* 156 Wn.2d at 90.

¶17 When evaluating the language of a statute, we apply the last antecedent rule: " 'unless a contrary intention appears in the statute, qualifying words and phrases refer to the last antecedent.' " *Berrocal,* 155 Wn.2d at 593 (quoting *In re Sehome Park Care Ctr., Inc.,* 127 Wn.2d 774, 781, 903 P.2d 443 (1995)); *In re Pers. Restraint of Smith,* 139 Wn.2d 199, 204-05, 986 P.2d 131 (1999). Yet " 'the presence of a comma before the qualifying phrase is evidence the qualifier is intended to apply to *all antecedents* instead of only the immediately preceding one.' " *Berrocal,* 155 Wn.2d at 593 (quoting *Sehome Park,* 127 Wn.2d at 781-82); *see also Woodson v. State,* 95 Wn.2d 257, 263-64, 623 P.2d 683 (1980).

¶18 In this case, we must consider the application of the words "as a result of the termination" where the legislature referred to "an agreement . . . under which the county is to be paid a reasonable amount for *costs associated with prosecution, adjudication, and sentencing in criminal cases filed in district court as a result of the termination.*" RCW 3.46.150(1) (emphasis added). Applying the last antecedent rule, it appears that the phrase "as a result of the termination" modifies the last antecedent "cases filed in district

court," and not "costs," because the legislature did not place a comma after "court." The parties cite to no evidence in the rest of chapter 3.46 RCW that the legislature intended a contrary meaning. Thus, based on the language of RCW 3.46.150(1), we conclude that the legislature intended to *require* an agreement only as to costs of criminal cases to be filed in district court as a result of the termination of the municipal department.

¶19 But even were we to resort to legislative history, our result would be the same. The relevant language was adopted as part of the court improvement act of 1984. The act contained similar provisions requiring identical agreements between a city and county where a city sought to abolish its municipal court or where the city sought to repeal its criminal code or a portion of that code defining crimes. RCW 3.50.800(1) (repeal of municipal code); RCW 3.50.805 (termination of municipal court). Apparently all of these provisions arose because

> [i]n the early 1980s there was concern that some municipalities were terminating their court system[s], or repealing those portions of their criminal codes that were expensive to enforce while retaining portions of the civil code that generated moneys for the city, and in effect transferring the cost of prosecution, adjudication, and sentencing of criminal cases to the counties.

FINAL BILL REP. on Substitute S.B. 5472, at 1, 57th Leg., Reg. Sess. (Wash. 2001) (providing background on these provisions); *see also In re Disciplinary Proceeding Against Hammermaster*, 139 Wn.2d 211, 249, 985 P.2d 924 (1999) (noting city manipulation of local court systems to maximize revenue and avoid costs) (Talmadge, J., concurring); *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 539-40, 909 P.2d 1303 (1996) (detailing Bellingham's repeal of certain ordinances for the purpose of shifting all jailable offenses to county district court but retaining traffic infractions). These tactics often placed a "significant burden on the county's district court." SENATE JUDICIARY COMM. SUMM. on Engrossed Substitute S.B. 4430, at 5-6, 48th Leg., Reg. Sess. (Wash. 1984). These provisions were adopted to prevent

municipalities from terminating or limiting their court systems in such a way that some or all criminal cases would be forced onto the county district courts without compensation. *See id.*; *see also Whatcom County*, 128 Wn.2d at 552 ("The Legislature clearly intended to prevent a city from achieving a budgetary benefit by imposing the burden of criminal code enforcement on a county."). The provisions protected counties by requiring cities to agree to pay the district court for "costs associated with criminal filings in the district court resulting from the termination or repeal." SENATE JUDICIARY COMM. SUMM., *supra*, at 1.

¶20 The legislative history supports the City's argument that RCW 3.46.150(1) does not require an agreement as to *all* costs of the termination of the municipal department before valid notice can be given. Once a municipal department is terminated, if a new criminal case would have previously been filed in the municipal department (for which the city paid the county) but would now be filed in district court (for which the city does not pay), then the city must agree to pay the resulting cost to the county.[3] That is all that RCW 3.46.150(1) requires in this case.[4]

¶21 *Adequacy of This Transfer Agreement.* The District Court asserts that the City's termination notice cannot be valid absent allocation of various costs involving *open* cases, but the language of RCW 3.46.150(1) refers only to criminal cases *filed* in district court as a result of the termination. The language plainly does not require agreement as to

---

[3] Such cases could arise if a city attempts to terminate its municipal court system altogether or if a city attempts (as the city of Bellingham did in the 1980s) to place jailable offenses in the county district court but place more lucrative cases in the city municipal court. *See Whatcom County*, 128 Wn.2d at 542-43; SENATE JUDICIARY COMM. SUMM., *supra*, at 1.

[4] This interpretation is supported by the legislature's 2001 amendments, which were intended to make it *easier* for municipalities to move from a municipal department of a district court to an independent municipal court and vice versa. *See* S.B. REP. on S.B. 5472, at 1-2, 57th Leg., Reg. Sess. (Wash. 2001) (repealing provision requiring municipalities to maintain a municipal department in a district court for at least 10 years, thereby providing the cities with a bit more flexibility).

pending cases.[5] Similarly, contrary to the District Court's argument, infraction and parking cases are civil in nature and thus their costs are not contemplated by RCW 3.46-.150(1), which requires agreement only as to certain criminal cases. The costs for transportation of prisoners, courtroom space, and transition training, and the transfer of employee files, existing probation files, and existing court files likewise are not encompassed by the limited requirement of RCW 3.46.150(1). While the City and County certainly could (and probably should) agree to the allocation of these costs, RCW 3.46.150(1) requires as a prerequisite for adequate notice *only* an agreement as to costs of future criminal cases filed in the district court as a result of the termination of the municipal department.

¶22 The City and County clearly agree that upon termination of the municipal department, all city municipal criminal cases would be filed in the new City of Spokane Municipal Court. CP at 21. With regard to case filings *after* termination of the municipal department, there is straightforward agreement that is not hindered by any hesitation that the County cannot enter into the agreement. While the District Court argues that other provisions in the agreement are merely "agreements to agree," the provisions dealing with cases to be filed after the municipal department's termination do not suffer from that infirmity. Because the agreement contains a clear severability clause, CP at 35, the provisions regarding cases filed after the termination of the municipal department survive, even if some provisions are construed as invalid agreements to agree.

¶23 Because the transfer agreement provides that all city criminal cases will be filed in the new municipal court after the municipal department is terminated, the agreement satisfies the prerequisite set forth in RCW 3.46-

---

[5] The issue of jurisdiction over pending cases is discussed in more detail below.

.150.[6] None of the costs contemplated by RCW 3.46.150(1) are implicated here. Thus, the existing transfer agreement is adequate to satisfy the statute.

¶24 *District Court as Necessary Party to Agreement.* We next determine whether the transfer agreement is nevertheless invalid because the District Court was not a party.[7] The District Court contends that the county commissioners cannot be legally bound by promises made regarding district court administration because GR 29 requires that the presiding judge be responsible for the court's administra-

---

[6] One portion of the transfer agreement arguably leaves open the possibility of future City criminal cases being heard in the District Court. Currently, the City and County participate in a co-located domestic violence court under which one District Court judge hears all domestic violence cases from both the City and the County. CP at 105. "Because cases are assigned to one judge by alphabet, this program results in one judge hearing all pending cases against an individual defendant." CP at 105. The transfer agreement fails to provide for the continued operation of the domestic violence program, including the domestic violence court. CP at 106. Because the new City of Spokane Municipal Court will not likely be located in the same facility as the District Court, and because the transfer agreement provides that all City criminal cases must be filed in the new municipal court after termination of the municipal department, it seems that the co-located domestic violence court will no longer hear City domestic violence cases. *See* CP at 21. But the transfer agreement also provides that the parties will take all reasonably necessary actions to maintain and not jeopardize current grant funding for the co-located domestic violence court. CP at 36. Thus, it is also possible that the parties will agree in the future that City domestic violence cases will still be heard in the domestic violence court by a District Court judge. Depending on the resolution of this issue, the City may have to pay the District Court for its work on City domestic violence cases.

Even so, these cases are *currently* filed in the co-located domestic violence court, and if filing continues in that court, then there will be no change resulting from the termination of the municipal department. Thus, even these domestic violence cases can be read to fall outside of the requirement contemplated by the legislature in RCW 3.46.150(1).

[7] Without detailed discussion, the City contends that the District Court judges do not have standing to complain about the agreement. However, the City brought this suit for declaratory judgment and named the District Court as a party. CP at 3. Moreover, the Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW, allows for an interested person to request resolution of any question arising under the validity of a contract so long as the UDJA's underlying requirements are met. *Branson v. Port of Seattle*, 152 Wn.2d 862, 877, 101 P.3d 67 (2004). In order to have standing under the UDJA, the District Court must establish (1) an actual, present, and existing dispute (2) between parties having genuine and opposing interests, (3) involving direct and substantial interests, and (4) where a judicial determination will be final and conclusive. *Id.* Here, the District Court has established its direct and substantial interest, opposed to the City's, in a real dispute where a judicial determination will be final. Thus, the District Court has standing to ask this court to resolve whether the transfer agreement is valid.

tion. The District Court argues that any other conclusion would infringe upon its authority in violation of the separation of powers doctrine.

¶25 GR 29(e) explains,

[t]he Presiding Judge is responsible for leading the management and administration of the court's business, recommending policies and procedures that improve the court's effectiveness, and allocating resources in a way that maximizes the court's ability to resolve disputes fairly and expeditiously.

GR 29(f) makes it clear that the presiding judge cannot delegate the judicial and administrative duties set forth in GR 29 to either the legislative or executive branches of government. Specifically, a presiding judge must, among other tasks, "[s]upervise the business of the judicial district and judicial officers," assign cases, develop and coordinate statistical and management information, supervise the daily operation of the court, supervise court personnel, "[s]upervise the court's accounts and auditing the procurement and disbursement of appropriations and preparation of the judicial district's annual budget request," and "[a]ct as official spokesperson for the court." GR 29(f)(1), (6), (10). The presiding judge must supervise judicial officers to the extent necessary to ensure timely and efficient processing of cases. GR 29(h). The District Court contends that GR 29 mandates district court participation in any transfer agreement; otherwise, the legislative branch would improperly infringe upon the authority granted to a district court presiding judge by GR 29.

¶26 A fundamental principle of our constitutional system is that governmental powers are divided among three branches and each is separate from the others. *Carrick v. Locke*, 125 Wn.2d 129, 134, 882 P.2d 173 (1994). Like the United States Constitution, the Washington Constitution does not contain a formal separation of powers clause, but the very division of our government has been deemed to give rise to a vital separation of powers doctrine. *Id.* at 134-35. However, this doctrine does not require that the branches of government be hermetically sealed. *Id.* at

135. The doctrine serves mainly to ensure that the fundamental function of each branch remains inviolate. Otherwise, the doctrine contemplates flexibility and practicality. *Id.* " '[H]armonious cooperation among the three branches is fundamental to our system of government.' " *Wash. State Council of County & City Employees v. Hahn*, 151 Wn.2d 163, 168, 86 P.3d 774 (2004) (quoting *Zylstra v. Piva*, 85 Wn.2d 743, 750, 539 P.2d 823 (1975)). Responsibility for the tasks surrounding district court administration is shared between the legislative and judicial branches. *Id.* at 169.

¶27 When a court rule involves "a matter related to the court's inherent power and we are unable to harmonize the court rule and [a] statute, 'the court rule will prevail.' " *Id.* (quoting *Wash. State Bar Ass'n v. State*, 125 Wn.2d 901, 909, 890 P.2d 1047 (1995)). However, "inability to harmonize a court rule with a statute occurs *only* when the statute directly and unavoidably conflicts with the court rule." *Id.* (emphasis added). For example, in *Hahn,* we considered the connection between GR 29(f) and a state statute that required judges to bargain with court employees for non-wage-related matters. *Id.* at 167. Specifically, the judges argued that GR 29(f) and the statute were irreconcilable and under the rule, they could not be required to bargain with the employees' unions. *Id.* at 169. We concluded that GR 29's requirement that the judges "supervise" court employees did not conflict with the statute's requirement that they collectively bargain with those employees. *Id.* While GR 29 would prevent the judges from bargaining away their inherent power to control the daily operation of the courts, good faith collective bargaining with employees over working conditions would not reduce this inherent power because the statute did not require the judges to agree to every proposal submitted in the course of bargaining. *Id.* at 170.

¶28 The only agreement required by RCW 3.46.150(1) is one regarding the costs of criminal cases filed in district court as a result of the termination of the municipal department. The very existence of a municipal

department in a district court and the alternative establishment of an independent municipal court are *legislative* decisions. RCW 3.46.040 ("Establishment of a municipal department shall be initiated by a petition from the legislative body of the city to the county legislative authority."); RCW 3.50.010 ("Any city or town with a population of four hundred thousand or less may by ordinance provide for an inferior court to be known and designated as a municipal court."). While GR 29 charges the presiding judge of a district court with supervising the day-to-day administration of court business and with serving as a spokesperson for the court, nothing in the rule conflicts with the legislature's directive that city councils and county commissions must determine the existence of independent municipal courts or, alternatively, municipal departments of district courts. *See Spokane County v. State*, 136 Wn.2d 663, 668, 966 P.2d 314 (1998) (The relevant question is " ' "not whether two branches of government engage in coinciding activities, but rather *whether the activity of one branch threatens the independence or integrity or invades the prerogatives of another.*" ' " (quoting *Carrick*, 125 Wn.2d at 135 (quoting *Zylstra*, 85 Wn.2d at 750))). The doctrine of separation of powers serves mainly to ensure that the *fundamental functions* of each branch remain inviolate. *Carrick*, 125 Wn.2d at 135. A local legislative determination of which court will hear municipal criminal cases does not infringe upon the fundamental administrative functions of a district court's presiding judge, nor does it infringe upon the fundamental functions of the judiciary. Therefore, it was not necessary for the District Court to be a party to an agreement establishing a new municipal court and establishing that Spokane municipal criminal cases will be filed in that court.

¶29 In sum, we reverse the superior court and conclude that RCW 3.46.150(1) requires *only* an agreement that the County will be paid reasonable costs associated with the prosecution, adjudication, and sentencing of all criminal cases filed in District Court as a result of the termination of the municipal department. We conclude that here the City

and County entered into an agreement under which no criminal cases would be filed in District Court as a result of the termination. Because the creation of an independent municipal court is a legislative decision, GR 29 did not require the District Court presiding judge to be a party to this agreement. Finally, because the transfer agreement contains a severability clause, the validity of the other provisions in the transfer agreement is irrelevant. We therefore conclude that the City's notice was valid.

¶30 *Jurisdiction Over Pending Cases.* The City also asks us to determine whether the new municipal court or the District Court will have jurisdiction over municipal cases open in the municipal department on the date it is terminated. Jurisdiction is a question of law that we review de novo. *City of Spokane v. Marquette*, 146 Wn.2d 124, 129, 43 P.3d 502 (2002). The District Court asserts that it must retain jurisdiction over all open cases and that the City must continue to pay the District Court for its services. The trial court agreed, finding, "it's plain to me that the statute intended for [open cases] to be and remain where they were filed and where the jurisdiction was initially established." RP at 7.

¶31 The jurisdiction of inferior courts is controlled by the legislature, which has declared, "[a] municipal department shall have *exclusive* jurisdiction of matters arising from ordinances of the city, and no jurisdiction of other matters except as conferred by statute." RCW 3.46.030 (emphasis added). Similarly, an independent municipal court

> shall have *exclusive original* jurisdiction over traffic infractions arising under city ordinances and *exclusive original* criminal jurisdiction of all violations of city ordinances . . . and shall have original jurisdiction of all other actions brought to enforce or recover license penalties or forfeitures declared or given by such ordinances or by state statutes.

RCW 3.50.020 (emphasis added). When discussing the terms "exclusive" and "original" as they relate to jurisdiction, the Court of Appeals recently succinctly explained:

If a court has original jurisdiction, an action may be filed there. If it has exclusive original jurisdiction, the action must be filed there and nowhere else. If a court has exclusive *original* jurisdiction, all that remains to any other court is *appellate* jurisdiction.

*Ledgerwood v. Lansdowne*, 120 Wn. App. 414, 420, 85 P.3d 950 (2004).[8] Because the legislature granted exclusive original jurisdiction over ordinance violation cases to the municipal court, once the new municipal court is created, all cases arising out of ordinance violations should be adjudicated there and nowhere else.

¶32 The District Court's claim of continuing jurisdiction over open municipal cases seems to depend on the notion that jurisdiction of a case must remain in the court where the case has been properly filed. However, both the legislature and this court have recognized that in some cases it is appropriate to transfer jurisdiction of an open case to another division of the same court or to another court. *See* RCW 3.38.031 (Pending cases and proceedings shall be transferred to the appropriate court created after implementation of a districting plan.); *In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 785, 100 P.3d 279 (2004) (case should have been remanded to juvenile division of the superior court after adult criminal court lost jurisdiction). In fact, in 1961, when it first provided for municipal courts and municipal departments, the legislature contemplated the transfer of pending cases to newly created municipal courts and municipal departments. RCW 3.74.900 ("All cases, proceedings and matters pending before justice courts, police courts, municipal courts and night courts shall be transferred to the appropriate court established by chapters 3.30 through 3.74 RCW, together with all files, records and proceedings relating to such cases."). Thus, we

---

[8] In addition, we have held that municipal courts have concurrent jurisdiction with district courts when sentencing under a state statute but act within their exclusive original jurisdiction when enforcing municipal ordinances. *Avlonitis v. Seattle Dist. Court*, 97 Wn.2d 131, 136-37, 641 P.2d 169 (1982).

hold that open municipal cases should be transferred to the newly created municipal court on the date it is created.[9]

## III

## Conclusion

¶33 We hold that RCW 3.46.150(1) requires only that the City agree to pay for the costs of criminal cases that will be filed in the District Court as a result of the termination of the municipal department, and the transfer agreement in this case meets the statutory requirement. We also hold that municipal cases open in the municipal department on the date of the department's termination must be transferred to the new independent municipal court upon its inception. We therefore reverse the superior court.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

[No. 77534-6.   En Banc.]
Argued June 8, 2006.   Decided November 22, 2006.

---

[9] No party here asserts that it will refuse to continue negotiations regarding the costs of the transfer not contemplated by RCW 3.46.150(1), as provided for in the transfer agreement. Thus, we see no need to address any additional issues regarding the validity of other portions of the agreement.