

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| REC SOLAR GRADE SILICON LLC, | ) | |
| | ) | No. 40685-7-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | UNPUBLISHED OPINION |
| DEPARTMENT OF REVENUE, | ) | |
| | ) | |
| Respondent. | ) | |

STAAB, A.C.J. — Washington requires consumers to pay a use tax on natural gas purchased from a source outside the state. RCW 82.12.022. Like any tax, there are several exemptions. Relevant to this appeal, RCW 82.12.9651(1) provides a tax exemption for gases and chemicals used by a manufacturer in the production of semiconductor materials. The statute limits the exemption to several specifically described uses of the gas, including "to grow the product," followed by a catchall phrase "and other such uses whereby the gases and chemicals come into direct contact with the product during the production process." *Id.* The exemption also includes gases used to clean equipment used in the production process.

REC Solar Grade Silicon LLC (REC) produces solar grade silicon. It uses natural gas in the production process to grow its product, but the natural gas does not come into direct contact with the silicon.

REC filed a claim seeking a refund of use tax paid, arguing that it was entitled to the exemption because its use of natural gas to grow semiconductor materials was one of the listed exemptions. The Board of Tax Appeals (Board) denied REC's request for exemption, concluding that the qualifying phrase following "whereby" applied to all listed uses and allowed for an exemption only when there was direct contact between the gas and the product. After REC appealed, the superior court certified the case for direct review by this court.

We reverse the Board. The structure and plain language of the statute compel the conclusion that the qualifier following "whereby" modifies only the immediate proceeding phrase "other such uses." This interpretation is supported by the rule of the last antecedent, which provides that a qualifying phrase ordinarily applies to only the last item in a list unless a contrary intent is indicated. Here, the exemption sentence is structured into three parts: a specific list of uses, a catchall provision that requires direct contact with the gas during the production process, and a cleaning clause providing an exemption for gas used to clean the equipment after the process. The "whereby" clause, is not integrated into the earlier series of uses and most naturally modifies only "other

such uses." The Washington Department of Revenue's (the Department) contrary reading conflicts with both the statute's plain language and its explicit legislative intent.

Since it is undisputed that REC uses natural gas in the production of semiconductor materials to grow its product, one of the listed uses under the exemption, REC is entitled to a refund of the tax paid to use natural gas for this purpose.

BACKGROUND

As the material facts are not in dispute, the following summary draws largely from the Board's "Initial Decision on Cross Motions for Summary Judgment."

*REC's Manufacturing Process*

REC operates a facility in Moses Lake, where it manufactures semiconductor materials, including solar grade polysilicon. This high-purity polysilicon is then sold to solar panel manufacturers.

REC uses a multi-step manufacturing process. Initially, metallurgical grade silicon is ground to fine particles and reacted with hydrogen gas to form trichlorosilane (TCS). The TCS is then distilled and purified into silane gas. Next, the silane gas, along with hydrogen, is introduced into a fluidized bed reactor, where it decomposes and deposits silicon onto silicon seed particles. These particles grow in size and eventually form solar grade polysilicon.

Natural gas plays two roles in the process described above. First, natural gas is used to create the hydrogen used in the reactor.[1] Second, natural gas-fired heaters heat transfer fluid or oil, and the heated oil, in turn, provides the energy used to purify and react the materials being distilled, resulting in the production of silane. It is undisputed that the natural gas does not directly contact the silicon during the manufacturing process.

*Department of Revenue Refund Denial*

Between 2016 and 2017, REC submitted two refund requests to the Washington Department of Revenue (Department) for use tax paid on natural gas used during the period January 1, 2012 through October 31, 2017. The total amount of use tax REC paid during this period was approximately $1,722,538.

REC requested its refunds relying on the use tax exemption in RCW 82.12.9651(1), which provides:

> The provisions of this [use tax] chapter do not apply with respect to the use of gases and chemicals used by a manufacturer or processor for hire in the production of semiconductor materials. *This exemption is limited to gases and chemicals used in the production process to grow the product, deposit or grow permanent or sacrificial layers on the product, to etch or remove material from the product, to anneal the product, to immerse the product, to clean the product, and other such uses whereby the gases and chemicals come into direct contact with the product during the production process*, or

---

[1] The Department contends that REC did not argue this use of natural gas should qualify for the use-tax exemption before the Board and requests that we disregard this argument. However, as REC points out in its reply brief, REC did raise this argument before the Board.

uses of gases and chemicals to clean the chambers and other like equipment in which such processing takes place.

(Emphasis added.)

The Department conducted a limited audit and issued a partial refund of $80,999.73. It otherwise denied REC's requests on the basis that the use tax exemption did not apply because the statute requires that the gas "must directly contact the product being produced." AR at 212-13.

*Administrative Appeals*

REC appealed the Department's determination to the Department's administrative review and hearings division, which affirmed the denial. REC then appealed to the Board.

Before the Board, the parties filed cross-motions for summary judgment, advancing their interpretations of the exemption in RCW 82.12.9651(1). REC asserted that it was entitled to the exemption because it is a manufacturer of semiconductor materials, the natural gas was used to produce silane gas, and the silane gas is used to grow solar grade polysilicon. The Department responded with two primary arguments in asserting that REC was not entitled to the exemption: (1) the natural gas was used to produce silane gas, a separate product at an interim stage that could itself be sold, and (2) the natural gas never came into direct contact with the product being produced.

Following a hearing, the Board issued an initial decision granting summary judgment in favor of the Department. In its decision, the Board first summarized the parties' arguments:

> [REC] essentially argues that the "last antecedent rule" should be applied to the statute, so that the requirement for the gas to come into "direct contact" with the product is limited to "other such uses" and not all of the enumerated uses in RCW 82.12.9651.
>
> . . . .
>
> The Department asserts that the statute's phrase "other such uses" modifies the prior list of activities [based on the series-qualifier rule].

Clerk's Papers (CP) at 15-16. Subsequently, the Board, relying on a Washington Supreme Court case, *PeaceHealth St. Joseph Medical Center. v. Department of Revenue*,[2] and a United States Supreme Court case, *Paroline v. United States*,[3] adopted the Department's interpretation and applied the series-qualifier rule in concluding:

> 6. The phrase "and other such uses whereby the gases and chemicals come into direct contact with the product during the production process" in RCW 82.12.9651 applies to the list of activities ("grow the product, deposit or grow permanent or sacrificial layers on the product, to etch or remove material from the product, to anneal the product, to immerse the product, to clean the product") that are exempt uses of gases or chemicals.
>
> 7. The exemption in RCW 82.12.9651 does not apply to the Taxpayer's use of natural gas because the gas does not come into direct contact with the product.

CP at 18.

---

[2] 196 Wn.2d 1, 8, 468 P.3d 1056 (2020).
[3] 572 U.S. 434, 134 S. Ct. 1710, 188 L. Ed. 2d 714 (2014).

REC petitioned for reconsideration, which the Board denied. REC then petitioned for judicial review in the Grant County Superior Court. The superior court certified the case for direct review by this court pursuant to RCW 34.05.518.

ANALYSIS

This appeal requires the court to interpret RCW 82.12.9651(1) and decide whether REC's use of natural gas in its manufacturing process qualifies for a use tax exemption. REC argues that the statute's "direct contact" requirement applies only to the final catchall clause—"other such uses"—under the last antecedent rule. The Department contends that the plain language of the statute, as interpreted through the series-qualifier rule, applies the "direct contact" condition to all listed uses in the statute.

1. STANDARD OF REVIEW

A tax exemption presupposes a taxable status and the burden is on the taxpayer to establish eligibility for the benefit. *Group Health Co-op. v. Wash. State Tax Comm'n,* 72 Wn.2d 422, 429, 433 P.2d 201 (1967). Ambiguous tax exemption statutes are to be "construed strictly, though fairly and in keeping with the ordinary meaning of their language, against the taxpayer." *Id.*

The Administrative Procedures Act (APA), ch. 34.05 RCW, governs judicial review of final Board decisions. *See* RCW 82.03.180. The party asserting invalidity has the burden of demonstrating the invalidity of an agency action. RCW 34.05.570(1)(a).

This court grants relief if it determines that the agency has erroneously interpreted or applied the law. RCW 34.05.570(3)(d). Our review is de novo. RCW 82.03.180.

Where, as here, the original administrative decision was on summary judgment, the reviewing court must overlay the APA standard of review with the summary judgment standard. *Verizon Nw., Inc. v. Wash. Emp. Sec. Dep't*, 164 Wn.2d 909, 916, 194 P.3d 255 (2008). Under the summary judgment standard, we review the facts in the record in the light most favorable to the nonmoving party. *Id*. Summary judgment is appropriate only where the undisputed facts entitle the nonmoving party to judgment as a matter of law. *Id*. Thus, we evaluate the facts in the administrative record de novo and the law in light of the "error of law" standard in RCW 34.05.570(3)(d). *Id*.

2. PRINCIPLES OF STATUTORY INTERPRETATION AND RELEVANT RULES OF GRAMMAR

This case involves statutory interpretation, which also presents a question of law reviewed de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *Gray v. Suttell & Assocs.*, 181 Wn.2d 329, 339, 334 P.3d 14 (2014). To determine legislative intent, we look at the plain language of the statute, consider the text of the provision, the context of the statute, any related statutory provisions, and the statutory scheme as a whole. *Id*.

While we retain the ultimate authority to interpret the statute, we grant "'[c]onsiderable judicial deference' to the interpretation of the provision by those

charged with its enforcement" (i.e., the Department). *Impecoven v. Dep't of Revenue*, 120 Wn.2d 357, 363, 841 P.2d 752 (1992) (alteration in original) (quoting *Keller v. City of Bellingham*, 92 Wn.2d 726, 731, 600 P.2d 1276 (1979)) (alteration in original). Nevertheless, "[w]here statutory language is plain and unambiguous, courts will not construe the statute but will glean the legislative intent from the words of the statute itself, regardless of contrary interpretation by an administrative agency." *Agrilink Foods, Inc. v. Dep't of Revenue,* 153 Wn.2d 392, 396, 103 P.3d 1226 (2005).

Turning to the language of the statute itself, we consider "traditional rules of grammar" to discern the plain meaning. *PeaceHealth*, 196 Wn.2d at 8. In this case, the parties disagree on the application of two linguistic canons: the last antecedent rule and the series-qualifier rule. *See City of Bremerton v. Bright*, 32 Wn. App. 2d 465, 471, 556 P.3d 739 (2024).

The last antecedent rule provides that, unless a contrary intention appears in the statute, qualifying words and phrases, both grammatically and legally, refer to the last antecedent. *Boeing Co. v. Dep't of Licensing*, 103 Wn.2d 581, 587-88, 693 P.2d 104 (1985). The rule reflects basic intuition on how we speak. *Lockhart v. United States*, 577 U.S. 347, 351, 136 S. Ct. 958, 194 L. Ed. 2d 48 (2016). Application of the rule is particularly appropriate when the list is complex and extending the modifier across all items would be cognitively burdensome. *Id.* "Related to this rule is the corollary 'principle that the presence of a comma before the qualifying phrase is evidence the

9

qualifier is intended to apply to all antecedents instead of only the immediately preceding one.'" *State v. Bunker*, 169 Wn.2d 571, 578, 238 P.3d 487 (2010) (internal quotation marks omitted) (quoting *City of Spokane v. County of Spokane*, 158 Wn.2d 661, 673, 146 P.3d 893 (2006)).

The last antecedent rule is one of many aids to discover intent or meaning, but is not inflexible or uniformly binding. *Matter of Marriage of Cardwell*, 16 Wn. App. 2d 90, 99, 479 P.3d 1188 (2021). The rule is generally applied unless there is evidence of a contrary legislative intent. *City of Spokane*, 158 Wn.2d at 673. However, there is no mandatory presumption that the rule must be applied unless its application produces a nonsensical result. *PeaceHealth*, 196 Wn.2d at 10.

Conversely, the series-qualifier rule provides, "'when there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series.'" *Id.* at 8-9 (quoting BLACK'S LAW DICTIONARY 1642 (11th ed. 2019)). In considering whether the last antecedent rule or the series-qualifier rule applies, we consider the context of the challenged language and the statutory scheme as a whole. *Id.* at 9.

Some examples help to demonstrate the application of these rules. In *Lockhart*, the U.S. Supreme Court noted that under the series qualifier rule, a reader seeing "the laws, the treaties, and the constitution of the United States" would intuitively apply the final qualifying phrase "of the United States" to all of the items in the list. 577 U.S. at

352 (internal quotation marks omitted) (quoting Lockhart, 577 U.S. at 367 n.2 (Kagan, J., dissenting)). This is "because (among other things) laws, treaties, and the constitution are often cited together, because readers are used to seeing 'of the United States' modify each of them, and because the listed items are simple and parallel without unexpected internal modifiers or structure." *Id.*

Similarly, when a deduction is allowed for '"compensation for health care services covered under . . . medical assistance, children's health, or other program under chapter 74.09 RCW,"' the series qualifier rule applies so that the final modifier, "under chapter 74.09 RCW" applies to all of the items in the list. *PeaceHealth*, 196 Wn.2d at 8-9 (quoting RCW 82.04.4311). Notably, both programs fall under chapter 74.09 RCW, and the modifier makes sense when it is applied to each of the items in the series. *Id.* at 9.

By contrast, when a statute proves a sentencing enhancement for convictions "relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward," the final modifier "involving a minor or ward" applies only to that last antecedent because the listed items are not often listed together and readers are not accustomed to applying the modifier to each listed item. *Lockhart*, 577 U.S. at 352. In addition, "the varied syntax of each item in the list makes it hard for the reader to carry the final modifying clause across all three." *Id.*

11

3.   PLAIN LANGUAGE ANALYSIS OF RCW 82.12.022(1)

Under RCW 82.12.022, use tax is imposed on natural gas consumed in

Washington State unless an exemption applies.  RCW 82.12.9651(1) provides a use tax

exemption for gases and chemicals "used by a manufacturer . . . in the production of

semiconductor materials."  In full, the exemption statute provides:

> The provisions of this chapter do not apply with respect to the use of gases
> and chemicals used by a manufacturer or processor for hire in the
> production of semiconductor materials.  *This exemption is limited to gases
> and chemicals used in the production process to grow the product, deposit
> or grow permanent or sacrificial layers on the product, to etch or remove
> material from the product, to anneal the product, to immerse the product,
> to clean the product, and other such uses whereby the gases and chemicals
> come into direct contact with the product during the production process*, or
> uses of gases and chemicals to clean the chambers and other like equipment
> in which such processing takes place.  For purposes of this section,
> "semiconductor materials" has the meaning provided in RCW 82.04.2404[4]
> and 82.04.294(3).[5]

(Emphasis added.)

REC contends that the phrase "whereby the gases and chemicals come into direct

contact with the product during the production process" qualifies only "other such uses"

whereas the Department argues that it qualifies the preceding list of uses.

---

[4] RCW 82.04.2404 defines semiconductor materials as "silicon crystals, silicon
ingots, raw polished semiconductor wafers, and compound semiconductor wafers."
[5] RCW 82.04.294(3) provides that "[s]ilicon solar wafers, silicon solar cells, thin
film solar devices, solar grade silicon, or compound semiconductor solar wafers are
'semiconductor materials' for the purposes of RCW 82.08.9651 and RCW 82.12.9651."

We start with the language of the statute. *Gray*, 181 Wn.2d at 339. The exemption applies to the use of gases or chemicals used in the production process of semiconductor materials. As the Department points out, the statute specifies that the exemption is "limited" to certain uses. RCW 82.12.9651(1). The statute goes on to provide a series of infinitive phrases that describe how the gas must be used in order to qualify for the exemptions, i.e., "to grow," "to etch," "to anneal." The parties agree that the fifth phrase "other such uses" is a catchall phrase that is defined by the preceding list. In other words, "other such uses" must be similar to the preceding list of uses. The term "whereby," however, is used as a relative adverb that describes "other such uses." NEW OXFORD AMERICAN DICTIONARY 1968 (3d ed. 2010); THIRD NEW INTERNATIONAL DICTIONARY 2602 (1993). As written, the phrase following "whereby" most naturally modifies only "other such uses," and not the entire preceding series.

The structure of the sentence also supports our reading. Read as a whole, the exemption is broken up into three distinct sections. First, gases used "*in* the production process" for certain listed purposes qualify for the exemption. RCW 82.12.9651(1). Second, the exemption can apply to "other such uses" but only when the gases are used "*during* the production process," and only when the gases come into direct contact with the product. *Id.* Finally, the exemption applies after the production process, when gases are used to clean the equipment "in which such processing takes place." *Id.*

13

The statute's use of two distinct phrases—"in the production process" and "during the production process"—reflects an intentional distinction. At the beginning of the sentence, the enumerated exemptions are limited to gases used "in" the production process. The structure then shifts away from infinitive phrases and includes "other such uses whereby the gases and chemicals come into direct contact with the product *during* the production process." RCW 82.12.9651(1) (emphasis added). Using a gas "in the production process" suggests a broader functional limitation whereas using a gas "during the production process" indicates a narrower temporal limitation. If the "whereby" clause applied to the entire list, it would arguably create an internal conflict. On the other hand, if the two phrases were intended to have the same meaning, then applying the "whereby" clause to the entire list creates a redundancy.

The Department contends that the statute's last clause—allowing an exemption for "uses of gases and chemicals to clean the chambers and other like equipment"—supports applying the "direct contact" requirement to all preceding uses. It argues that because chamber-cleaning does not involve direct contact with the product, the legislature separated this clause to preserve a narrow exception for a non-contact use. In the Department's view, this separation only makes sense if direct contact is required for all prior production-related uses. However, as we noted above, the final clause is distinct not because it lacks direct contact, but because it occurs after the production process.

14

The last antecedent rule also reinforces our interpretation. Under this rule, the qualifying phrase "whereby the gases and chemicals come into direct contact with the product during the production process" refers to only the last antecedent "other such uses," and does not apply to the entire series. Similarly, the lack of a comma between "other such uses" and "whereby" reinforces that the qualifier is intended to apply only to the last antecedent.

The Department argues that the plain language of the statute requires a different result and contends that we should reject the last antecedent rule in favor of the series qualifier rule. We disagree.

The series qualifier rule does not enhance a natural reading of the statute. Under this rule, the qualifier following "whereby" would apply to the entire series of items, not just "other such uses." While the enumerated uses in the statute are generally parallel, the syntax is varied making it difficult and unnatural for the reader to apply the final modifying clause to each enumerated use. *See, e.g., PeaceHealth*, 196 Wn.2d at 9 (applying the modifier "program under chapter 74.09 RCW" to each item in the series). Similarly, attempting to extend the "whereby" clause across the complex list of items in the statute "would be cognitively burdensome." *See Lockhart*, 577 U.S. at 351. Applying the modifier to each listed item would read like this: "This exemption is limited to gases and chemicals used in the production process . . . to grow the product . . .

15

whereby the gases and chemicals come into direct contact with the product during the production process."

The Department contends that *PeaceHealth* controls this case and requires that we apply the series qualifier rule to hold that the "direct contact" qualifier applies to the entire list of uses. In *PeaceHealth*, our Supreme Court applied the series-qualifier rule to a statute providing a deduction for "'compensation for health care services covered under . . . medical assistance, children's health, or other program under chapter 74.09 RCW.'" 196 Wn.2d at 8 (quoting RCW 82.04.4311). Although the last antecedent rule would typically apply because no comma preceded the qualifying phrase, the court applied the series-qualifier rule instead. *Id.* at 9-10. It did so citing "context of the contested clause and the broader statutory scheme as a whole," and the fact that all the programs listed were programs under the same chapter. *Id.* at 11. To demonstrate application of the rule to this statute, the court applied the contested modifier to each item in the list. *Id.* at 9-10.

The syntax of the statute in *PeaceHealth* is distinguishable. In *PeaceHealth*, the statute had a short parallel list followed by a clearly placed qualifier that naturally and grammatically applied to each item. In contrast, RCW 82.12.9651(1) uses a complex sentence containing (according to the Department) eight uses followed by a distinctive noun phrase which is then qualified by a "whereby" clause that is grammatically and structurally separated from the earlier items.

The Department's reliance on *Paroline* is similarly unpersuasive. In *Paroline*, the United States Supreme Court interpreted a federal restitution statute that required courts to order restitution in the "full amount of the victim's losses," including enumerated categories such as medical services, therapy, and lost income, followed by a "catchall category for 'any other losses suffered by the victim as a proximate result of the offense.'" 572 U.S. at 446 (quoting former 18 U.S.C. § 2259(b)(3) (1996)). The Court held that the proximate cause requirement applied to all categories, not just the final catchall. *Id*. at 447-48. It relied on the canon of construction that: "'[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all.'" *Id*. at 447 (quoting *Porto Rico Railway, Light & Power Co. v. Mor*, 253 U.S. 345, 348, 40 S. Ct. 516, 64 L. Ed. 944 (1920)). But the Court further emphasized that proximate cause is a well-established and widely understood principle in criminal and tort law, making it natural and appropriate to read as applying uniformly to the listed losses. *Id*. at 446-48.

Here, by contrast, there is no indication in the statutory text that "direct contact" is an inherent or assumed requirement across the listed semiconductor production uses. Nor does the statute establish "direct contact" as a baseline or background principle of semiconductor manufacturing. Thus, unlike in *Paroline*, the listed uses in RCW 82.12.9651(1) do not share a common attribute that supports extending the qualifying

language across the series. Accordingly, *Paroline* offers no support for applying the series-qualifier rule to this statute.

Next, the Department argues that the last antecedent rule should not be applied because it would contradict other language in the statute. Specifically, the Department contends that applying the last antecedent rule would conflict with the statute's requirement that the exemption be "limited." We agree that use of this term demonstrates an intent to limit the exemption, but it does not override the sentence structure and syntax. The verb "limited to" narrows the exemption to the qualifying uses; it does not impose unexpressed conditions on the qualifying uses. The statute is unquestionably limited in scope, but the question is *how* it is limited—not whether it is. The Department's argument conflates the existence of a limitation with the separate question of how the "direct contact" clause functions within the statute's structure.

As a corollary argument, the Department contends that REC's interpretation of the statute is so broad that the exemption would apply to any use of gases or chemicals without limitation or qualification. We disagree. The plain language of the statute provides limitations and narrows the scope. The exemption does not include all uses, only those integral to the production process and used either in, during, or after the process.

4. THE LEGISLATURE'S EXPLICIT INTENT SUPPORTS APPLICATION OF THE LAST
ANTECEDENT RULE

"'Ultimately, in resolving a question of statutory construction, this court will adopt the interpretation which best advances the legislative purpose.'" *Portugal v. Franklin County*, 1 Wn.3d 629, 650, 530 P.3d 994 (2023) (quoting *Bennett v. Hardy*, 113 Wn.2d 912, 928, 784 P.2d 1258 (1990)).

RCW 82.12.9651 was enacted in 2006 as part of a broader legislative effort to promote investment in Washington's semiconductor manufacturing industry and enhance the state's competitiveness. *See* LAWS OF 2006, ch. 84, §§ 1, 4. In enacting the exemption, the legislature identified the semiconductor industry as a key "industry cluster" for Washington's economy and determined that targeted tax incentives were necessary to retain and attract advanced manufacturers. LAWS OF 2006, ch. 84, § 1 ("Tax incentives for the semiconductor cluster are important in both retention and expansion of existing businesses and attraction of new businesses, all of which will strengthen this cluster.").

The legislature has reaffirmed the statutory language and policy choice multiple times. Since its enactment, the substance of RCW 82.12.9651(1) has remained unchanged, even as the legislature has extended the exemption multiple times, most recently through 2034. *Compare* former RCW 82.12.9651(1) (2006) *with* RCW 82.12.9651(1); *see also* LAWS OF 2024, ch. 261, § 12(5). If the legislature had intended

19

to impose a universal "direct contact" requirement, it had ample opportunity to do so. It did not.

Subsequent enactments further support the legislature's intent. In 2017, the legislature extended the statute in part to "maintain and grow jobs in the semiconductor cluster" and specifically emphasized the importance of "business in the solar silicon manufacturing cluster." *See* LAWS OF 2017, 3d Spec. Sess., ch. 37, § 401(3); RCW 82.04.2404 (official notes). That legislative intent is directly relevant to this case. REC's use of natural gas during the growth and annealing of solar grade silicon is undisputedly part of the core manufacturing process for semiconductor materials.

The Department's interpretation would exclude such uses based solely on whether the gas physically touches the product, even when those processes are expressly listed in the statute. That reading undermines the legislature's stated intent. By contrast, REC's interpretation, which gives full effect to the enumerated uses while preserving the limiting function of the "direct contact" clause in the catchall, is textually faithful and aligned with the legislature's intent.

5. THE DEPARTMENT'S LEGISLATIVE HISTORY ARGUMENT IS UNPERSUASIVE

Although the statute is unambiguous and we therefore need not resort to extrinsic aids such as legislative history, the Department's legislative history argument is not persuasive. The Department relies heavily on the history of RCW 82.12.970, a related

statute enacted three years earlier, to argue that RCW 82.12.9651 imposes a universal "direct contact" requirement.

The Department points out that RCW 82.12.970 and RCW 82.12.9651 contain nearly identical language regarding the scope of the exemption. Both statutes limit the use tax exemption to gases and chemicals "used in the [production/manufacturing] process to grow the product, deposit or grow permanent or sacrificial layers on the product, to etch or remove material from the product, to anneal the product, to immerse the product, to clean the product, and other such uses whereby the gases and chemicals come into direct contact with the product." RCW 82.12.9651(1),.970(1).

However, the Department's argument does not rely on the text of RCW 82.12.970. Instead, it relies on a striking amendment adopted during the 2003 legislative session, which described the bill as providing "use tax exemptions for gases and chemicals directly used in production." Resp't Br. at 48-49 (quoting Amend. 5725 AMH GOMB H3039.5 to S.B. 5725, at 11-12, 58th Leg., Reg. Sess. (Wash. 2003). But the "directly used" phrase does not appear in the final enacted language of either statute. RCW 82.12.970,.9651. Both statutes instead use the phrase "come into *direct contact* with the

product." *Id*. (emphasis added). The Department does not offer a compelling argument that "directly used" is synonymous with "direct contact."[6]

The Department also cites a fiscal note prepared in connection with the 2006 legislation, which paraphrases the statute at issue as exempting gases "used to grow, make deposits on, etch, anneal, clean, and otherwise directly come in contact with the product." Resp't Br. at 50. But this summary essentially restates the statutory language without resolving the core interpretive question—whether the direct contact requirement modifies only the final phrase or the entire list. Thus, the fiscal note is not helpful to the Department.

Finally, the Department suggests that a uniform direct contact requirement simplifies administration and provides a "bright-line rule." But ease of administration cannot justify reading limitations into a statute that the legislature did not adopt. Courts do not rewrite unambiguous statutory language under the guise of interpretation. *Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006).

---

[6] REC cites WAC 458-20-13601(8) defining "used directly" to argue that the phrase does not require physical contact. However, that WAC expressly applies only to the exemptions in RCW 82.08.02565 and RCW 82.12.02565. WAC 458-20-13601(1)(a). It does not interpret RCW 82.12.9651, and is not relevant to determining the scope of the "direct contact" requirement in that statute.

We conclude that the Board erroneously interpreted and applied the use tax exemption in RCW 82.12.9651. The plain language of the statute and its legislative intent support application of the last antecedent rule—not the series qualifier rule. Under the correct interpretation, the phrase "whereby the gases and chemicals come into direct contact with the product" modifies only the final catchall clause—"other such uses"—and does not modify the six specifically enumerated production processes.

We reverse and remand to the Board for further proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, A.C.J.

WE CONCUR:

_____
Fearing, J.

_____
Cooney, J.