IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IN THE MATTER OF THE MARRIAGE OF: | ) ) ) | No. 37531-5-III |
| PAUL CARDWELL, | ) ) | |
| Respondent, | ) ) | PUBLISHED OPINION |
| and | ) ) | |
| REGAN CARDWELL, | ) ) | |
| Appellant. | ) | |

FEARING, J. —

> *If such was the intent of the legislature, the grammar used defeated that purpose. This concurrence is written to bring this specific situation to the attention of the legislature and to suggest the desirability of adding a grammarian to their technical staff.* In re Estate of Kurtzman, *65 Wn.2d 260, 269, 396 P.2d 786 (1964) (Hill, J., concurring).*

> *No one knows when and when not to use a comma.* Kay Brossard, Washington State comma expert.

The mother of two daughters, Regan Cardwell, appeals denial of her request for a minor modification of the girls' residential schedule after her change in domicile returned her to the children's home city. The appeal requires us to enter a wonderland of grammatical conventions in order to construe an ambiguous statute addressing the grounds on which a parent may gain a minor modification. We decline to apply the

ostensible last antecedent rule and interpret the controlling statute, RCW 26.09.260(5)(b), to require that a parent who moves residences must show that the current schedule is impractical in order to procure a modification. We agree with the trial court that the mother failed in her showing.

## FACTS

Regan Cardwell and Paul Cardwell beget two daughters, born respectively in 2006 and 2008. The couple separated in 2010, at which time Regan fled with the children to Alabama and hid them from Paul. Paul filed for marital dissolution, gained custody of the two children, and eventually brought the daughters to Moses Lake. Regan than moved to Spokane.

A parenting plan in the Grant County dissolution proceeding entered March 15, 2013 currently governs the respective parents' residential rights. Pursuant to the plan, the girls primarily reside with Paul Cardwell in Moses Lake. Paul and the daughters reside in a home with Paul's parents. Regan Cardwell has visitation on alternating weekends, two weeks each month during the summer, and designated holidays and breaks. The parties render major decisions jointly.

In 2014 and 2016, Regan Cardwell sought major modifications of the parenting plan that would afford her a majority of residential time with the daughters. She withdrew the first request, and the trial court denied the second request. This court affirmed the trial court's second denial, and the Supreme Court denied review of this

court's decision.

In August 2019, Regan moved from Spokane to Moses Lake.

PROCEDURE

In October 2019, Regan Cardwell filed a petition for modification of the parenting plan. She sought a major modification, or, in the alternative, a minor modification of the parenting plan. She sought a major modification of the parenting plan due to allegations of abuse on the part of the children's grandmother, Paul's mother. Regan's recent move to Moses Lake served as the basis for a minor modification. Her pleadings focused on procuring a major modification.

Under the minor modification request, Regan Cardwell requested that her time with the daughters be increased to nearly equal residential time with Paul. The girls would reside with Regan from Monday at 3 p.m. through Wednesday at 3 p.m. The daughters would also reside with Regan on alternating weekends from Friday at 5 p.m. to Sunday at 5 p.m. The proposed plan would modify the summer schedule to alternating weeks.

The Grant County Superior Court commissioner conducted an adequate cause hearing to consider the requested modifications. At the time of the hearing, the court commissioner ruled on Regan Cardwell's request for a major modification and entered an order denying adequate cause for the major modification.

RCW 26.09.260(5)(b) controlled Regan's request for a minor modification because of her move to Moses Lake. The language of RCW 26.09.260(5)(b) creates an ambiguity as to whether the nonresidential parent who moves must show that the present residential schedule is impractical to follow because of the move. Regan asked the court commissioner to construe the statute such that she need not establish impracticality. She additionally contended that she showed impracticality.

The court commissioner issued a letter ruling, on which we cannot improve. The court construed RCW 26.09.260(5)(b) to require the nonresidential parent to show that her move to a new city rendered the current parenting plan impractical to follow. The court commissioner also concluded that Regan Cardwell failed to submit any evidence that her move caused the residential schedule to become impractical. The commissioner denied a request from Paul Cardwell for an award of reasonable attorney fees and costs.

LAW AND ANALYSIS

On appeal, Regan Cardwell repeats the two arguments raised before the court commissioner. She contends that, under RCW 26.09.260(5)(b), she need not show that her change of residence renders the residential schedule in the parenting plan impractical to follow. In the alternative, she argues that the term "impractical" as used in the statute should be interpreted to mean "unreasonable or unwise" such that her request for modification should still be granted. On appeal, Paul Cardwell asks for an award of reasonable attorney fees and costs.

4

Paul Cardwell asks that we bestow deference to the trial court ruling. Nevertheless, some of the court commissioner's ruling depended on an interpretation of RCW 26.09.260(5)(b). We apply de novo review to statutory construction. *Williams v. Tilaye*, 174 Wn.2d 57, 61, 272 P.3d 235 (2012); *In re Marriage of Hansen*, 81 Wn. App. 494, 498, 914 P.2d 799 (1996). The court commissioner did find as a fact that Regan Cardwell failed to show impracticality to follow the current parenting plan. To the extent this ruling is based on underlying facts or the lack thereof, we review the determination for an abuse of discretion. *In re Parentage of Jannot*, 149 Wn.2d 123, 126, 65 P.3d 664 (2003).

Construction of RCW 26.09.260(5)(b)

RCW 26.09.260 controls the modification of a parenting plan. *In re Marriage of Shyrock*, 76 Wn. App. 848, 852, 888 P.2d 750 (1995). The language of RCW 26.09.260, consistent with the Uniform Marriage and Divorce Act, establishes a strong presumption against modification and in favor of continuity. *In re Marriage of Maclaren*, 8 Wn. App. 2d 751, 770, 440 P.3d 1055 (2019); *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). Before a full hearing on a petition to modify a residential schedule, the petitioner must demonstrate that adequate cause exists. *In re Marriage of Tomsovic*, 118 Wn. App. 96, 104, 74 P.3d 692 (2003).

Although the narrow provisions of RCW 26.09.260(5)(b) govern this appeal, we quote other sections of the lengthy RCW 26.09.260 to provide a background for

5

subsection (5)(b):

> (1) Except as otherwise provided in subsections (4), (5), (6), (8), and (10) of this section, the court shall not modify a prior custody decree or a parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child. . . .
>
> (2) In applying these standards, the court shall retain the residential schedule established by the decree or parenting plan unless:
>
> (a) The parents agree to the modification;
>
> (b) The child has been integrated into the family of the petitioner with the consent of the other parent in substantial deviation from the parenting plan;
>
> (c) The child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child; or
>
> . . . .
>
> (5) The court may order adjustments to the residential aspects of a parenting plan upon *a showing of a substantial change in circumstances of either parent* or of the child, and without consideration of the factors set forth in subsection (2) of this section, if the proposed modification is *only a minor modification in the residential schedule that does not change the residence the child is scheduled to reside in the majority of the time and*:
>
> . . . .
>
> (b) *Is based on a change of residence of the parent with whom the child does not reside the majority of the time or an involuntary change in work schedule by a parent which makes the residential schedule in the parenting plan impractical to follow*.

(Emphasis added.) We question whether a parent seeks a minor, as opposed to a major, modification, when she essentially seeks joint custody, but Paul Cardwell does not argue this point. Paul also concedes that Regan Cardwell presents a substantial change of

circumstances under RCW 26.09.260(5) because of her move from Spokane to Moses Lake. So we focus on the narrow terms of RCW 26.09.260(5)(b).

The poor drafting of RCW 26.09.260(5)(b) creates the ambiguity of whether the phrase "which makes the residential schedule in the parenting plan impractical to follow" at the end of the subsection applies to both the clauses "a change of residence of the [nonresidential] parent" and "an involuntary change in work schedule by a [nonresidential] parent" or only the latter of the two clauses. We label the phrase "which makes the residential schedule in the parenting plan impractical to follow" as the modifying or qualifying phrase. We brand the two preceding phrases as antecedents. A "change in work schedule" is the last antecedent. Note that no comma follows the second usage of "parent" at the end of the second or last antecedent and before the word "which," which begins the modifying clause.

Our fundamental purpose in construing a statute is to ascertain and carry out the intent of the legislature. *In re Marriage of Schneider*, 173 Wn.2d 353, 363, 268 P.3d 215 (2011). In so doing, we rely on many tested, commonsensical, and intelligent principles to divine the meaning of the statute, principles employed when interpreting other important and even sacred texts. *State v. Jimenez*, 200 Wn. App. 48, 52, 401 P.3d 313 (2017).

We deem four principles of statutory construction relevant to this appeal, one which favors Regan Cardwell and three which favor Paul Cardwell. We discuss the

principles favorable to Paul later. The one principle favoring Regan's reading of

RCW 26.09.260(5)(b) directs us to employ rules of grammar to aid us in construing a

statute. *Berrocal v. Fernandez*, 155 Wn.2d 585, 600, 121 P.3d 82 (2005). One such

purported syntax rule is the last antecedent rule.

Washington courts employ the last antecedent rule in cases of statutory

interpretation. *State v. Bunker*, 169 Wn.2d 571, 578, 238 P.3d 487 (2010); *City of

Spokane v. County of Spokane*, 158 Wn.2d 661, 673, 146 P.3d 893 (2006). Under this

rule, qualifying or modifying words and phrases refer to the last antecedent. *State v.

Bunker*, 169 Wn.2d at 578. A corollary principle is that the presence of a comma before

the qualifying phrase evidences that the qualifier is intended to apply to all antecedents

instead of only the immediately preceding one. *State v. Bunker*, 169 Wn.2d 571, 578,

(2010); *Berrocal v. Fernandez*, 155 Wn.2d 585, 593, 121 P.3d 82 (2005). Use of a

comma therefore looms important, and RCW 26.09.260(5)(b) lacks this punctuation

mark. Therefore, the last antecedent rule indicates that the disputed phrase in RCW

26.09.260(5)(b) should only modify "involuntary change in work schedule" and not

"change in residence."

We must choose whether to follow the last antecedent rule. Courts need not

always strictly adhere to technical grammatical rules in interpreting statutory provisions.

*Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of

Eagles*, 148 Wn.2d 224, 242, 59 P.3d 655 (2002). The last antecedent rule is one of

many aids to discovery of intent or meaning, but is not inflexible and uniformly binding.
*State v. McGee*, 122 Wn.2d 783, 788-89, 864 P.2d 912 (1993). The rule of the last
antecedent can be overcome by other indicia of meaning. *PeaceHealth St. Joseph
Medical Center v. Department of Revenue*, 196 Wn.2d 1, 10, 468 P.3d 1056 (2020). A
court may even abandon the rule despite it offering a sensible result. *PeaceHealth St.
Joseph Medical Center v. Department of Revenue*, 196 Wn.2d 1, 10.

Although we lack authority to abrogate the last antecedent rule, we question its
validity. All written language needs some invented grammar rules for effective
communication, but the English language lacks any final arbiter of the rules. History
suggests that courts manufactured the last antecedent rule for purposes of contract and
statute interpretation rather than grammarians creating the rule antecedent to court
rulings. One dictionary defines the term as applying only in a legal context. *Last
Antecedent Rule*, MERRIAM-WEBSTER'S ONLINE DICTIONARY, https://www.merriam-
webster.com/legal/last%20antecedent%20rule (last visited Dec. 29, 2020). One scholarly
article claims the rule has no parallel in general literature and instead conflicts with
common usage of commas. Kenneth A. Adams, *Behind the Scenes of the Comma
Dispute*, GLOBE & MAIL (Toronto) (Aug. 28, 2007),
https://www.theglobeandmail.com/report-on-business/behind-the-scenes-of-the-comma-
dispute/article20400648/ (last visited Dec. 29, 2020). Since the English speaking

universe employs commas arbitrarily and whimsically, a court should not divine legislative intent on the thin reed of the placement of a comma.

The Washington Supreme Court has applied the last antecedent rule on occasion. *Gray v. Suttell & Associates*, 181 Wn.2d 329, 339, 334 P.3d 14 (2014); *City of Spokane v. County of Spokane*, 158 Wn.2d 661, 673-74, 146 P.3d 893 (2006); *Boeing Co. v. Department of Licensing*, 103 Wn.2d 581, 587, 693 P.2d 104 (1985). But the court has also chosen on occasion to ignore the rule when interpreting a statute. *PeaceHealth St. Joseph Medical Center v. Department of Revenue*, 196 Wn.2d 1, 10 (2020); *State v. Bunker*, 169 Wn.2d 571, 578 (2010).

In *State v. Bunker*, 169 Wn.2d at 578-79, the court refused to apply the last antecedent rule, when construing RCW 26.50.110, when it declined to expand the modifying phrase beyond the last antecedent despite a comma preceding the qualifying phrase. The court deemed such an interpretation contrary to the reading of the whole statute and the policies behind the statute that created the crime of violation of a no-contact order. In *State v. McGee*, 122 Wn.2d 783 (1993), the Evergreen State high court also refused to apply the last antecedent rule when construing RCW 69.50.435, which criminalizes manufacturing, delivering, and possessing with an intent to deliver, because the application of the rule conflicted with legislative purposes.

We move to a discussion of the principles of statutory interpretation that favor Paul Cardwell. These other principles, which we decide to apply in this appeal, promote

10

reading RCW 26.09.260(5)(b) as employing the phrase "which makes the residential schedule in the parenting plan impractical to follow" as qualifying the antecedent "a change of residence of the [nonresidential] parent."

First, courts discern the practical effect of adopting the interpretation. *Berrocal v. Fernandez*, 155 Wn.2d 585, 594 (2005). If we agreed with Regan Cardwell's interpretation, two circumstances serve as a basis for minor modification under RCW 26.09.260(5)(b), however, only one requires that the residential schedule in the parenting plan be rendered impractical. Therefore, though both circumstances are placed together under subsection (5)(b), one carries a higher burden in order to establish that particular circumstance. We discern no legitimate reason to require the showing of impracticality based on a change in work schedule as opposed to a move in residence particularly since we wish to effectuate a child's best interest.

Second, when interpreting a statute, we consider the public policy embodied in the legislation. *American States Insurance Co. v. Bolin*, 122 Wn. App. 717, 723, 94 P.3d 1010 (2004). Regan Cardwell's interpretation of RCW 26.09.260(5)(b) conflicts with policies behind the statute. Under Regan's reading of the statute, the nonresidential parent might gain additional residential time on any move. RCW 26.09.260 seeks to limit the circumstances under which the court will allow a change in a parenting plan.

Third, when the legislature reenacts a statute, we presume the legislature was familiar with the judicial construction of a statute. *Lines v. Yakima School District, No.*

11

*7*, 12 Wn. App. 939, 943, 533 P.2d 140 (1975). Therefore, if some of the language in a statute abides reenactment, we may construe that language in conformance to earlier case law.

Two of our decisions addressed former RCW 26.09.260(4)(b)(iii) (1991): *In re Marriage of Flynn*, 94 Wn. App. 185, 972 P.2d 500 (1999) and *Bower v. Reich*, 89 Wn. App. 9, 964 P.2d 359 (1997). At the time the cases were decided, subsection (4)(b)(iii) read:

> (4) The court may order adjustments to a parenting plan upon a showing of a substantial change in circumstances of either parent or of the child, and without consideration of the factors set forth in subsection (2) of this section, if the proposed modification is only a:
>
> . . . .
> (b) Minor modification in the residential schedule that:
>
> . . . .
> (iii) *Is based on a change of residence or an involuntary change in work schedule by a parent which makes the residential schedule in the parenting plan impractical to follow.*

Former RCW 26.09.260 (1991) (emphasis added). The legislature amended the statute in 1999, 2000 and 2009. The language of the former subsection parallels that of the current subsection (5)(b). The language still includes the same syntax, two clauses separated by "or," without a comma before "which."

*In re Marriage of Flynn*, 94 Wn. App. 185 (1999), Brenda Manis sought a minor modification of a parenting plan. Manis remarried and moved to California from

12

Spokane. This court held that Manis successfully showed adequate cause for a minor modification of the parenting plan due to the impracticality of the current plan.

In *Bower v. Reich*, 89 Wn. App. 9 (1997), Barbara Bower applied for and was accepted to a graduate program in California. This court held that, by showing the opportunity to go to graduate school in California, Bower showed the current parenting plan would be rendered impractical.

*In re Marriage of Flynn* and *Bower v. Reich* support the conclusion that the modifying clause at the end of RCW 26.09.260(5)(b) applies to both the first and last antecedent. A "change of residence" must cause the residential schedule within the parenting plan to become impractical. At the time the legislature amended the language, it did not alter the language in a manner that would conflict with interpretations by this court.

We conclude that the legislature requires a substantial change in circumstance and also a showing that the residential schedule in the parenting plan is impractical for a change in residence and an involuntary change in work schedule.

Impracticality

Regan Cardwell next asks this court to, assuming we read RCW 26.09.260(5)(b) to her disfavor, define the term "impractical" as used in RCW 26.09.260(5)(b) to her liking. To repeat, the statute declares, in relevant part:

13

> based on a change of residence of the parent with whom the child does not reside the majority of the time . . . *which makes the residential schedule in the parenting plan impractical to follow*.

(Emphasis added.)

Regan Cardwell contends that the trial court improperly created a standard of impossibility. She interprets the word "impractical" as unreasonable. She asks us to adopt "unreasonable, unwise, imprudent, or not sensible" as the meaning of "impractical." In turn, she argues that the current parenting plan is unreasonable since she lives in such close proximity to her daughters. She contends that, in light of the best interest of the daughters, this court should deem the current schedule unreasonable as thwarting added bonding between daughters and mother when the mother returns to the daughters' home town.

Because the RCW 26.09.260 does not define "impractical," we reference the ordinary dictionary definition of the word. A nontechnical statutory term may be given its dictionary meaning. *State v. Smith*, 189 Wn.2d 655, 662, 405 P.3d 997 (2017). One dictionary defines the term as:

> Not practical: as **a** (1) **:** not wise to put into or keep in practice or effect **:** not pleasing to common sense or prudence . . . **b :** incapable of dealing sensibly or prudently . . . **c :** IMPRACTIBLE **:** incapable of being put into use or effect or of being accomplished or done successfully or without extreme trouble, hardship, or expense.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1136 (1993). We note that the definition incorporates concepts of prudence or wisdom, but the meaning incorporates

14

more notions. The word encompasses the ideas of incapability, hardship, and lack of success.

We observe that the word "impractical," in RCW 26.09.260(5)(b), qualifies the phrase "residential schedule," not the allotted time between parent and child. We conclude the court commissioner did not abuse his discretion when concluding that Regan Cardwell's move to Moses Lake did not create a hardship in following the parenting plan. Her move did not render the parties incapable of complying with the plan or endanger the success of the current plan.

RCW 26.09.260(5)(c) permits for modification of a parenting plan with regard to residential time if the parenting plan does not "provide reasonable time with the parent with whom the child does not reside a majority of the time." Regan Cardwell's argument that the current schedule for time with the daughters is unreasonable based on her move may fit the confines of RCW 26.09.260(5)(c) better than the strictures of RCW 26.09.260(5)(b). Regan has not sought modification under RCW 26.09.260(5)(c).

Attorney Fees

Paul Cardwell requests reasonable attorney fees on appeal pursuant to RAP 18.1. Paul emphasizes that Regan Cardwell has appealed two other attempts to modify the parenting plan. He complains that these efforts have ensured constant turmoil in the relationship between the parties and their children. He also contends that Regan's appeal is not supported by facts and she fails to show any error from below.

15

No. 37531-5-III
*In re Marriage of Cardwell*

RAP 18.1(a) provides for attorney fees if permitted by applicable statute.

RCW 26.09.260(13) provides for attorney fees in circumstances when:

> the court finds that a motion to modify a prior decree or parenting plan has been brought in bad faith, the court shall assess the attorney's fees and court costs of the nonmoving parent against the moving party.

This appeal raises new circumstances not previously litigated. The appeal also raises a question of statutory interpretation never addressed by appellate courts since the 2000 amendment of RCW 26.09.260(5)(b). We do not deem the appeal brought in bad faith and deny the requested fees.

CONCLUSION

Because the superior court correctly interpreted and applied RCW 26.09.260(5)(b), we affirm the court's denial of Regan Cardwell's motion for adequate cause to amend the parenting plan. We deny Paul Cardwell reasonable attorney fees on appeal.

_____
Fearing, J.

WE CONCUR:

_____          _____
Korsmo, J.P.T.[1]                                              Pennell, C.J.

---

[1] Judge Kevin M. Korsmo was a member of the Court of Appeals at the time argument was held on this matter. He is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

16