IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 38589-2-III |
| | ) | |
| JUSTIN SMITH, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| MELANIE SMITH, | ) | |
| | ) | |
| Respondent. | ) | |

PENNELL, J. — Justin Smith appeals a superior court order ruling he had not established adequate cause to modify the parties' parenting plan. We reverse and remand for a modification hearing.

No. 38589-2-III
*In re Marriage of Smith*

FACTS

Justin Smith and Melanie Vavra, formerly known as Melanie Smith, married in June 2014. They are the parents of T.S., who is now seven years old. Mr. Smith and Ms. Vavra separated in October 2017. Their divorce became final on March 14, 2019. The parties' parenting plan designates Ms. Vavra the primary residential parent and provides substantial residential time to Mr. Smith. No restrictions are imposed on either parent.

In November 2020, Mr. Smith petitioned to modify the parenting plan, alleging a substantial change of circumstances detrimental to T.S.'s health. Mr. Smith supported his petition with a sworn declaration and attached exhibits.[1]

Much of Mr. Smith's declaration focused on his concern about Ms. Vavra's remarriage to her ex-husband, Brian Vavra. The Vavras remarried less than four months after issuance of the Smiths' divorce decree, but Mr. Smith did not learn about the

_____

[1] Mr. Smith notes that his prior attorney "forgot to file all of the exhibits before the adequate cause hearing." Reply Br. of Appellant at 10-11. Mr. Smith believes that the exhibits were all presented to the superior court commissioner as bench copies, but that the superior court judge "did not see them all as they were not in the central clerk's file." *Id*. at 11. Indeed, many of the exhibits Mr. Smith mentions in his declaration are not in the record on review, and thus many—but not all—of his allegations lack extrinsic support before this court. Our review is limited to those aspects of Mr. Smith's declaration that are factually supported or otherwise agreed to by Ms. Vavra.

2

remarriage until August 2019. Mr. Smith found the Vavras' remarriage troubling because Mr. Vavra has a history of substance abuse and domestic violence directed at Ms. Vavra. In 2001, Mr. Vavra pleaded guilty to burglary, unlawful imprisonment, and fourth degree assault after he broke into Ms. Vavra's house, apparently angry that Ms. Vavra had ended her relationship with him. The Vavras subsequently married in 2006 and divorced in 2010.

In 2011, Ms. Vavra obtained a protection order against Mr. Vavra. In the protection order petition, Ms. Vavra declared she had divorced Mr. Vavra because of his temper and drug use. According to Mr. Smith, the Vavras have had a toxic relationship that has cycled through periods of romantic involvement, domestic abuse, dissolution, and reconciliation. Mr. Smith voiced concern that Ms. Vavra's decision to remarry her ex-husband suggested she had reengaged in that cycle, posing a danger to T.S. while he lived in Ms. Vavra's household.

Mr. Smith supported his various concerns about Ms. Vavra in his declaration by specifically alleging:

- Ms. Vavra failed to comply with the parenting plan on the same day it was finalized.

3

- When Ms. Vavra vacated the Smith family home in April 2019, she left the residence in disrepair. There was evidence of a water leak, stains and odors in multiple bedrooms, rodent traps, and holes in walls. Mr. Smith also claimed he found multiple used needles in the home's garage. He supported this allegation with photographs.

- Ms. Vavra relocated with T.S. without providing adequate notice.

- Ms. Vavra had unlawfully failed to return official identification that she had obtained on the basis of Mr. Smith's military service, and she had wrongfully arranged with the United States Postal Service to have Mr. Smith's mail forwarded to her mother's address.

- Ms. Vavra had Mr. Smith's contact information removed from T.S.'s school records, interfering with his ability to pick up T.S.

- Ms. Vavra had instructed T.S.'s counselor's office, without obtaining Mr. Smith's authorization, to charge Mr. Smith's credit card for a one-on-one meeting Ms. Vavra had with the counselor.

- Ms. Vavra had been banned from a Wendy's restaurant where Mr. Smith's older son worked because she had visited the Wendy's with T.S. in tow and berated employees.

- Ms. Vavra had changed the location for drop-off and pickup of T.S. Instead of delivering T.S. to Mr. Smith at Ms. Vavra's home, as required by the parenting plan. She had required Mr. Smith to meet her at the gate to her community, allegedly endangering T.S. because the drop-off was now alongside oncoming traffic.

Mr. Smith also noted concerns regarding the behavior and appearance of his son:

- Mr. Smith alleged T.S. routinely showed up for visits in a neglected state, with ill-fitting clothes. Mr. Smith supported this allegation with photographs.

- T.S. recently began displaying age-inappropriate behavior, including pretending to take shots of liquor and mimicking sexual situations.

Finally, Mr. Smith also revealed he had learned from a public records request that Ms. Vavra had allowed her daughter F.V., then 15, to purchase drugs from a man she met on Snapchat. After using the drugs, F.V. required hospitalization.

Ms. Vavra responded to Mr. Smith's petition for modification and filed sworn declarations of her own. Ms. Vavra denied the majority of Mr. Smith's allegations, claiming they were either misunderstandings or outright lies. She also explained that Mr. Vavra had rehabilitated himself and was no longer using drugs. The Vavras both submitted the results of hair follicle tests, showing an absence of evidence of drugs.

Mr. Smith's modification petition was set for consideration before a superior court commissioner. The commissioner found adequate cause, noting concern over Mr. Vavra's history of domestic violence. The commissioner then ordered the appointment of a guardian ad litem and a full modification hearing.

Ms. Vavra was successful in a motion to revise the commissioner's decision. In granting revision, the superior court judge expressed concern over Mr. Vavra's history of domestic violence. However, the court reasoned Mr. Vavra should not be judged solely by his history, particularly given the Vavras' proffered evidence of rehabilitation. The judge stated that the only evidence of detriment arising since the Vavras' remarriage was Mr. Smith's allegation that T.S. has mimicked age-inappropriate behavior. The court reasoned it could not find adequate cause to modify the parenting plan based on this limited information. The judge denied Ms. Vavra's request for attorney fees, finding Mr. Smith's petition was not brought in bad faith.

The superior court entered a formal order granting revision and incorporated its oral ruling by reference. Mr. Smith timely appeals.

ANALYSIS

Parenting plan modifications are governed by RCW 26.09.260 and .270. These statutes establish "a strong presumption against modification and in favor of continuity."

6

*In re Marriage of Cardwell*, 16 Wn. App. 2d 90, 96, 479 P.3d 1188 (2021). A parent

petitioning for modification must submit sworn statements establishing adequate cause to

justify a full modification hearing. RCW 26.09.270. "At the very minimum, 'adequate

cause' means evidence to support a finding on each fact that the movant must prove in

order to modify; otherwise, a movant could harass a nonmovant by obtaining a useless

hearing." *In re Marriage of Lemke*, 120 Wn. App. 536, 540, 85 P.3d 966 (2004). If the

adequate cause burden is not met, the court cannot proceed to a full hearing on the merits

of a petition. *In re Parentage of Jannot*, 149 Wn.2d 123, 124, 65 P.3d 664 (2003).

A trial court's decision on adequate cause is reviewed for abuse of discretion.

*Id*. at 128. When a case involves an order on revision, we review "the decision of the

superior court judge, not the commissioner." *In re Marriage of Lyle*, 199 Wn. App. 629,

633, 398 P.3d 1225 (2017). A court abuses its discretion when its order is based on

untenable grounds or reasons, or is otherwise manifestly unreasonable. *Gildon v. Simon

Prop. Grp., Inc.*, 158 Wn.2d 483, 494, 145 P.3d 1196 (2006).

Mr. Smith's petition invoked RCW 26.09.260(2)(c), which requires courts to retain

an extant parenting plan "unless . . . [t]he child's present environment is detrimental to the

child's physical, mental, or emotional health and the harm likely to be caused by a change

of environment is outweighed by the advantage of a change to the child." To ultimately

obtain a modification under this statutory provision, the court here would need to

conclude that "(1) a substantial change occurred in circumstances as they were previously

known to the court, (2) the present arrangement is detrimental to [T.S.'s] health,

(3) modification is in [T.S.'s] best interest, and (4) the change will be more helpful than

harmful to [T.S.]." *In re Marriage of Zigler*, 154 Wn. App. 803, 809, 226 P.3d 202

(2010).

Contrary to the conclusion of the superior court, Mr. Smith submitted sufficient

evidence to establish adequate cause to proceed to a full hearing on his petition.

We discuss each of the four applicable elements in turn.

First, Mr. Smith alleged a substantial change in circumstances that was unknown

to the court at the time of the divorce: the Vavras' reconciliation and subsequent

remarriage. It is unclear when the Vavras rekindled their relationship. But in her briefing

to this court, Ms. Vavra indicates she and Mr. Vavra were romantically involved at the

time of the divorce proceedings. Opening Br. of Resp't at 39. Nothing in the record

suggests that either the dissolution court or Mr. Smith were aware that the Vavras'

relationship extended beyond coparenting their daughter, F.V. Had the dissolution court

been presented with evidence that the Vavras were living together at the time of trial, it

would have been required to impose restrictions on Ms. Vavra's residential time with T.S.

based on Mr. Vavra's history of domestic violence. Former RCW 26.09.191(2)(b)(iii) (2017).[2]

Second, Mr. Smith has proffered information suggesting Ms. Vavra's relationship with Mr. Vavra is detrimental to T.S.'s health. According to Mr. Smith, shortly after the divorce—when logic would dictate the Vavras were advancing their relationship— Ms. Vavra began a series of concerning behaviors, including misappropriating Mr. Smith's property and money; laying waste to the family home; and vacating the home with used hypodermic needles in the garage. Given Mr. Vavra's history of domestic violence and substance abuse, Mr. Smith's proffered evidence raises the inference that Ms. Vavra's reunion with her ex-husband contributed to this purported change in behavior. Furthermore, given Mr. Smith's allegations that another child in Ms. Vavra's care required hospitalization after using drugs, that T.S. had shown up for visitation in a neglected state, and that T.S. has displayed age-inappropriate behavior, mimicking sexual situations and alcohol use, there is a reasonable inference that Ms. Vavra's remarriage to Mr. Vavra is detrimental to T.S.

---

[2] It is unclear whether the Vavras were living together during the course of the dissolution proceedings or whether they were just dating.

Third, to the extent that living in Ms. Vavra's household potentially exposes T.S. to domestic violence, modification would be in his best interest. *Cf. Rodriguez v. Zavala*, 188 Wn.2d 586, 596, 398 P.3d 1071 (2017).

Fourth, the parenting plan already requires T.S. to spend a substantial amount of time with Mr. Smith and imposes no restrictions on Mr. Smith. Thus, modification would not cause more harm than good if, after an evidentiary hearing, the court concludes Ms. Vavra's home is detrimental to T.S.'s health.

In denying Mr. Smith's request for adequate cause, the superior court focused only on what happened after June 24, 2019, the date of the Vavras' remarriage. The court reasoned that "since that time, the only evidence showing a detrimental environment would be the child mimicking what [Mr. Smith] presumes is in the [Vavras'] home." Clerk's Papers at 333-34.

The superior court's temporal focus was too narrow. The relevant change in circumstances was the Vavras' reconciliation, which obviously preceded their remarriage date. The record suggests the Vavras became romantically involved around the same time as the divorce proceedings of Mr. Smith and Ms. Vavra. Mr. Smith has produced evidence of concerning behavior by Ms. Vavra since the parties' divorce, including evidence that he discovered used hypodermic needles at the family home after Ms. Vavra

vacated it. The majority of Mr. Smith's allegations are not, by themselves, sufficient to suggest that Ms. Vavra's household has become unsafe. But taken in its totality, the evidence produced by Mr. Smith is sufficient to raise an inference that Ms. Vavra has resumed a destructive relationship with Mr. Vavra.

The evidence proffered by Mr. Smith is sufficient to warrant a full hearing on his modification petition. Because the superior court took too narrow a view of the evidence, the determination that Mr. Smith did not establish adequate cause was an abuse of discretion. This matter must be reversed and set for a full modification hearing. At the hearing, the superior court will be tasked with deciding whether modification is ultimately warranted pursuant to RCW 26.09.260(2)(c).

In ruling in favor of Mr. Smith here, we by no means signal a position regarding the final outcome of that modification hearing. The superior court rightly recognized that people should not be solely judged on their past conduct. A household member's history of domestic violence is relevant to a court's parenting plan decisions. *See, e.g.*, former RCW 26.09.191(2)(b)(iii). But our legal system must also recognize the possibility of rehabilitation and redemption. Ms. Vavra's evidence suggests that Mr. Vavra has turned his life around and that Mr. Smith's concerns are unwarranted. Should this prove true, Ms. Vavra would be entitled to a decision in her favor. But as an appellate court we

11

are not in a position to make factual findings. The parties' disputes must be resolved in superior court at an evidentiary hearing.

CONCLUSION

This matter is reversed and remanded for a full modification hearing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____    _____
Lawrence-Berrey, A.C.J.          Fearing, J.