IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 39539-1-III |
| | ) | |
| ELIZABETH EDMONDS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| ROBERT EDMONDS, | ) | |
| | ) | |
| Respondent. | ) | |

PENNELL, J. — Elizabeth Edmonds appeals from an order modifying a parenting plan. We affirm.

FACTS

Robert Edmonds and Elizabeth Edmonds divorced in 2019. They have three children. The superior court ordered an agreed-upon parenting plan that authorized joint decision-making about the children. The court found no reason to put limitations on either parent. The parties agreed the children would reside primarily with Ms. Edmonds. Given that Mr. Edmonds's work schedule at the time was unpredictable and often required him to travel, the parties agreed the children would reside with Mr. Edmonds whenever he was in Spokane, and that he would be required to give at least 24 hours' notice to Ms. Edmonds of any return to Spokane.

No. 39539-1-III
*In re Marriage of Edmonds*

In May 2021, Mr. Edmonds filed a petition for a major modification of the parenting plan.[1] In his proposed parenting plan, Mr. Edmonds sought a finding that Ms. Edmonds has a long-term emotional and physical problem that gets in the way of her ability to parent. Mr. Edmonds sought limitations on Ms. Edmonds's decision-making authority and sought to become the children's primary residential parent. The superior court apparently found adequate cause for Mr. Edmonds's petition to proceed to a full hearing, and a temporary parenting plan was put in place making Mr. Edmonds the primary residential parent. In the meantime, a superior court commissioner had held Ms. Edmonds in contempt, holding she had intentionally violated provisions of the permanent parenting plan in bad faith.

The superior court held a full modification hearing on Mr. Edmonds's petition in August 2022. Ms. Edmonds asked the superior court for a continuance, claiming she had not seen a trial schedule because her prior attorney sent it to her electronically but it had been accidentally deleted. The superior court denied the continuance, noting the trial had been scheduled for several months and it was Ms. Edmonds's responsibility to keep track of the schedule.

---

[1] Ms. Edmonds did not designate Mr. Edmonds's petition as part of the record on review, so it is not clear on what basis he formally sought modification.

In opening statements, Mr. Edmonds's counsel asked for two separate residential schedules: one for the parties' oldest child and another for the younger two. For the oldest child, Mr. Edmonds sought a "phased schedule" in which Ms. Edmonds would have supervised visits with the child to start, eventually "moving up to . . . increased time." Rep. of Proc. (RP) (Aug. 15, 2022) at 17. As to the younger children, Mr. Edmonds sought a schedule in which Ms. Edmonds would have the children every other weekend during the school year and 50/50 during the summer. For her part, Ms. Edmonds asked for 50/50 custody with all of her children, but insisted Mr. Edmonds needs treatment for his mental health, ostensibly as a prerequisite to any residential time for him.

Over the course of three days, the superior court heard extensive testimony about the children and their parents from both parties, as well as from Mr. Edmonds's sister.

Mr. Edmonds testified that Ms. Edmonds had impeded the oldest child's education by e-mailing him extensively during the school day. Also, extensive unrebutted evidence showed Ms. Edmonds had violated court orders by communicating with the oldest child about the ongoing litigation, making disparaging remarks about Mr. Edmonds, encouraging the oldest child to run away, and using the oldest child to collect information about Mr. Edmonds. The testimony from both parties showed that Ms. Edmonds had recently experienced a spell of homelessness, serious kidney problems, and untreated

mental illness culminating in a suicide attempt. Mr. Edmonds cited these facts in his

testimony as his motivation for seeking a change to the parenting plan, adding generally

that Ms. Edmonds had exhibited instability and newfound parenting deficits.

On the morning of the second day of trial, Mr. Edmonds's attorney indicated there

was a preliminary issue that needed to be addressed:

> Ms. Edmonds just indicated recently a minute ago that she intends on
> calling witnesses. She did not participate in the joint trial management
> report.[2] She didn't provide any of the names of those witnesses to me. She
> didn't provide any exhibits or anything in advance of trial. She was notified
> of all of these issues . . . and now today for the first time this morning she
> indicates she intends on calling witnesses, and it looks like she's preparing
> exhibits also, so we're going to have a serious issue with me being able to
> be prepared for trial today. She could have said something yesterday, but
> now apparently she's going to give me exhibits and call witnesses that
> haven't been identified today.

RP (Aug. 16, 2022) at 180. Mr. Edmonds's counsel asked the court to disallow

Ms. Edmonds from introducing exhibits, and asked that she be prohibited from calling

any witnesses besides herself.

The court then turned to Ms. Edmonds, who responded, "[M]y exhibits are just

to basically expose what they've been accusing me of." *Id.* at 181. The court asked for

an example of something Ms. Edmonds wanted to admit. Ms. Edmonds stated she wanted

---

[2] The joint trial management report was not designated as part of the record.

4

to admit e-mails written by her oldest child as proof of Mr. Edmonds's mistreatment of him. The court reminded Ms. Edmonds that it could not consider out-of-court statements for the truth of the matter asserted.

The court stated it would reserve ruling on the admissibility of Ms. Edmonds's exhibits: "[W]hy don't we do it this way. I'm going to be able to better rule on your evidence when I hear your testimony." *Id*. at 183. The court explained the process: "You're going to testify . . . . And if you think it's necessary to submit some evidence at that time, you can offer it, [opposing counsel] can object, and I'll make a ruling. . . . I think that's the best way to go about it." *Id.* Ms. Edmonds never moved for admission of any exhibits during her testimony.

With regard to witnesses, Ms. Edmonds stated she wanted to call her friend, Gracie Klontz, to testify on her behalf. The superior court asked Mr. Edmonds's counsel if he had prior notice of Ms. Edmonds's desire to call Ms. Klontz. While Ms. Edmonds had not participated in the joint trial management report, Mr. Edmonds's counsel looked in his client file, and conceded Ms. Edmonds had once stated, "'Gracie is one of my witnesses'" in a deposition. *Id*. at 185. The court stated it would reserve ruling on whether Ms. Klontz could testify.

Later that day, the superior court informed Ms. Edmonds, "I'm going to allow brief testimony from your witness," reasoning that Mr. Edmonds's sister, Michelle Dansereau, had already testified and Ms. Dansereau was also not mentioned in the joint trial management report. *Id.* at 274.

Mr. Edmonds's counsel objected. Counsel pointed out Ms. Edmonds had never objected to Ms. Dansereau's testimony and, "It's not tit for tat." *Id*. at 278. Counsel asked that Ms. Edmonds be sanctioned for her failure to file a witness list and failure to participate in the joint trial management report, contending, "[W]e gave her a lot of opportunities to try to coordinate and get this done." *Id.* at 281; *see id.* at 278. Ms. Edmonds conceded, "I didn't submit anything" pretrial. *Id.* at 281.

The court revised its ruling:

[G]oing back to what I indicated on the motion for continuance, Ms. Edmonds did receive the case scheduling order with the notice of withdrawal of her previous attorney. And while I do empathize that it is difficult for a pro se to understand all the intricacies in proceeding forward, case law indicates I do have to hold you to the same standard as a represented party. In other words, I can't favor Ms. Edmonds over Mr. Edmonds simply because she's representing herself. That would not be fair.
. . . [S]he did have notice of this case scheduling order, and it does indicate clearly that the joint trial management report is due on July 28th, and Ms. Edmonds has not provided that. [Opposing counsel] did reach out to her. . . . [A]t this point I am going to limit the testimony for the remainder of the trial to what is included in the joint trial management

> report, and Ms. Edmonds is not permitted to present any witnesses.
> However, she can present her own testimony.

*Id.* at 282. Mr. Edmonds successfully objected to hearsay in Ms. Edmonds's testimony on numerous occasions.

Nevertheless, Ms. Edmonds was permitted to repeatedly claim in her testimony that she was concerned her children were suffering "abuse" in Mr. Edmonds's home. *Id*. at 271, 290, 297, 361, 363; RP (Aug. 17, 2022) at 378-79.

The superior court held a hearing about one week after the conclusion of trial and began its oral ruling by noting, "[t]here was some contradictory testimony," that required the court "to make credibility findings." RP (Aug. 23, 2022) at 445. The court explained that, "for the most part," it found Mr. Edmonds was "more credible" than Ms. Edmonds, citing many examples of Ms. Edmonds's "contradictory" or "illogical" testimony. *Id.* at 447, 446.

The court went on, concluding that Ms. Edmonds's prior period of homelessness was not a basis for modification because Ms. Edmonds had cured that issue. Nevertheless, the court cited Ms. Edmonds's recent serious physical and mental health struggles, and noted Ms. Edmonds had not provided the court or Mr. Edmonds with any medical records or indicated that she had undergone any mental health treatment since her suicide attempt.

On this basis, the court concluded Ms. Edmonds had developed a long-term impairment that impeded her parenting ability.

Further, the superior court cited extensive unrebutted evidence of Ms. Edmonds's recent abusive use of conflict that tended to damage the oldest child's relationship with Mr. Edmonds, and demonstrated a lack of insight about the oldest child's needs. The court expressly disbelieved Ms. Edmonds's allegations of abuse and disagreed with Ms. Edmonds's assessment that Mr. Edmonds "is one hundred percent responsible" for the oldest child's behavioral problems. *Id*. at 459; *see id.* at 446, 478. The court voiced "great concern" that Ms. Edmonds had "not support[ed] [the oldest child] receiving medication after he was hospitalized" for mental health issues. *Id.* at 464. The court further expressed "concerns" that Ms. Edmonds transported the children in her car for years without a valid driver's license. *Id.* at 479-80.

The court stated it would grant Mr. Edmonds sole decision-making authority over the children and would order a new permanent residential schedule, largely aligning with Mr. Edmonds's proposal. The superior court ordered both parents to participate in counseling with the oldest child and to follow the recommendations of the counselor.

The court entered a formal order granting Mr. Edmonds's petition—along with written findings—which incorporated its oral ruling by reference. *See* Final Order and

Findings on Petition to Change a Parenting Plan or Custody Order, *In re Marriage of Edmonds*, No. 19-3-00004-32, at 2-4 (Spokane County Super. Ct., Wash. Oct. 3, 2022). Among other findings, the court found: "Where there was conflicting testimony, for the most part, . . . Mr. Edmonds' testimony [was] more credible than Ms. Edmonds' testimony. . . . The Court does not have concern that the children are in danger in Mr. Edmonds' care." *Id.* at 3. Ms. Edmonds moved for reconsideration. The court denied Ms. Edmonds's motion, concluding that Ms. Edmonds was "primarily reiterat[ing] arguments" she had already made at the modification hearing, that "new evidence" proffered by Ms. Edmonds "could have been discovered with reasonable diligence" in advance of the hearing, and that a motion for reconsideration "is not the proper time for a party to present their case." Order Denying Petitioner's Motion for Reconsideration, *In re Marriage of Edmonds*, No. 19-3-00004-32, at 2-3 (Spokane County Super. Ct., Wash. Jan. 18, 2023).

Ms. Edmonds filed a notice of appeal.

## ANALYSIS

Parenting plan modifications are governed by RCW 26.09.260 and .270. These statutes establish "a strong presumption against modification and in favor of continuity." *In re Marriage of Cardwell*, 16 Wn. App. 2d 90, 96, 479 P.3d 1188 (2021). Nevertheless,

9

superior courts have "broad discretion" when ruling on a petition to modify a parenting

plan. *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). We review

a trial court's decision to modify a parenting plan for abuse of that discretion. *In re*

*Marriage of Zigler*, 154 Wn. App. 803, 808, 226 P.3d 202 (2010). A superior court

abuses its discretion if its decision is based on untenable grounds or untenable reasons or

is otherwise manifestly unreasonable. *See, e.g.*, *Summers v. Sea Mar Cmty. Health Ctrs.*,

29 Wn. App. 2d 476, 488, 541 P.3d 381 (2024).

Ms. Edmonds urges this court to reverse the superior court's decision, asserting

that her ex-husband is an "evil" child abuser and that Mr. Edmonds and his attorney are

"[l]iars." Appellant's Br. at 21, 44. These are not a cognizable basis for review. As an

appellate court, we do not reweigh conflicting evidence or displace the credibility

determinations made by the trier of fact. *See, e.g.*, *In re Vulnerable Adult Pet. for Knight*,

178 Wn. App. 929, 937, 317 P.3d 1068 (2014). Nor may we substitute our own judgment

for that of the trial judge. *See, e.g.*, *Dave Johnson Ins., Inc. v. Wright*, 167 Wn. App. 758,

778-79, 275 P.3d 339 (2012) (holding, where trial court "expressly ruled that [litigant]'s

testimony was not credible," appellate court was bound by that determination).

Ms. Edmonds also alleges that the superior court was "[in]competent" Appellant's

Br. at 37. She appears to refer to an instance where Mr. Edmonds's attorney asked a legal

question during trial. Ms. Edmonds fails to cite any authority for her claim that a trial court should be reversed based on perceived incompetence, as opposed to a specific assignment of error. But in any event, it is not incompetent for a trial judge to pose a legal question to an attorney. To the contrary, that is what judges are supposed to do.

Ms. Edmonds appears to argue that the superior court improperly held her, as a pro se litigant, to the same standard as an attorney. Again, this was not error. This is what the court was required to do. *See, e.g.*, *In re Vulnerable Adult Pet. for Winter*, 12 Wn. App. 2d 815, 844, 460 P.3d 667 (2020); *Kelsey v. Kelsey*, 179 Wn. App. 360, 368, 317 P.3d 1096 (2014).

Finally, Ms. Edmonds laments that the superior court sanctioned her failure to participate in the pretrial process by limiting the evidence she could present to her own testimony. She further complains that the superior court sustained Mr. Edmonds's hearsay objections. But a trial court's decision to exclude evidence is reviewed for an abuse of discretion. *See, e.g.*, *Thornton Creek Legal Def. Fund v. City of Seattle*, 113 Wn. App. 34, 58, 52 P.3d 522 (2002). Rulings on discovery sanctions are similarly reviewed for abuse of discretion. *See, e.g.*, *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997). Ms. Edmonds has not articulated any reason for believing the superior court abused its discretion.

No. 39539-1-III
*In re Marriage of Edmonds*

In sum, Ms. Edmonds's failure to develop arguments precludes review. *See, e.g.,* *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012). We therefore affirm. And insofar as arguments can be gleaned from her briefing, they lack merit. We also affirm on this basis.

## CONCLUSION

The matter on appeal is affirmed. Mr. Edmonds's request for attorney fees is denied. However, under RAP 14.2, he is entitled to costs as the substantially prevailing party on review, subject to compliance with RAP 14.4.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Staab, A.C.J.

_____
Cooney, J.

12