IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of DIANE TRAN, | No. 83126-7-I |
| Respondent, | DIVISION ONE |
| and | UNPUBLISHED OPINION |
| TIMOTHY SCHWEITZER, | |
| Appellant. | |

BOWMAN, J. — Timothy Schweitzer appeals the trial court's 2021 final orders and parenting plan entered following a bench trial on his petition for a major modification of a 2016 parenting plan involving Schweitzer, his former wife Diane Tran, and their son J.S. Schweitzer argues that the trial court abused its discretion in finding no grounds for his major modification request and imposing a minor modification that decreased his residential time. He also argues the trial court abused its discretion in finding him intransigent and awarding Tran all her attorney fees and costs. We conclude that the trial court did not err in determining that Schweitzer failed to demonstrate a basis for a major modification of the parenting plan. But the trial court made no findings to support modifying the summer schedule to reduce Schweitzer's residential time. And the trial court's findings did not support its conclusion that Schweitzer was intransigent. Accordingly, we affirm in part, reverse and vacate in part, and remand for further proceedings consistent with this opinion.

This opinion bases the citations and pin cites on the Westlaw online version of the cited material.

FACTS

Schweitzer and Tran married in 2009. Tran is an anesthesiologist and Schweitzer is an orthopedic surgeon. J.S. was born in July 2012. In October 2013, the parties separated, and Tran and J.S. relocated from the family home in Portland, Oregon, to Snoqualmie, Washington.

The parties divorced in Oregon in April 2014. The stipulated parenting plan provided that 18-month-old J.S. would continue to reside primarily with Tran and that Tran would have sole decision-making authority with input from Schweitzer on major decisions. The parenting plan also granted Schweitzer residential time in Washington, starting with 3 consecutive days (no overnights) every other week, plus an optional half-day in alternating weeks, and gradually increasing to every other weekend with overnights.

In 2015, Schweitzer petitioned the Oregon court to modify the parenting plan to an equal residential schedule. The parties agreed to appoint licensed psychologist Dr. Edward Vien to conduct a parenting evaluation and make a parenting plan recommendation to the court. Dr. Vien declined to recommend an equal residential schedule "due to the disparate attitudes, knowledge, and experience between parents which would likely result in stress and discontinuity for their son." Instead, he recommended maintaining three-year-old J.S.'s primary residence with Tran, adding one overnight a week, and gradually increasing J.S.'s time with Schweitzer until age seven. At that time, J.S. would reside with Schweitzer every Thursday overnight and every other weekend, plus 50 percent of the summer weeks, with J.S. residing with Tran the last week of

summer break.  Dr. Tran also suggested that "family reassessment may be warranted when [J.S.] enters second grade to ensure an optimal schedule."

In April 2016, the Oregon court entered a modified parenting plan that continued to award sole legal and primary physical custody of J.S. to Tran, while also incorporating Dr. Vien's recommended residential schedule.  The court appointed parenting coordinator and coach Anne Lucas to "facilitate the parties following the court ordered parenting time plan" and "encourage and improve trust, communication and cooperation" between Schweitzer and Tran.  Schweitzer moved to Washington full time in 2017 and currently resides a few miles from Tran and J.S.

In September 2019, when J.S. turned seven and entered second grade, Schweitzer filed a petition in Washington for a major modification of the parenting plan under RCW 26.09.260(1) and (2).  Schweitzer alleged that J.S.'s "current living situation is harmful to [J.S.'s] physical, mental or emotional health" and proposed an equal residential schedule.  In his declaration in support of the petition, Schweitzer asserted that Tran was "very rigid with regard to the parenting plan," that her "alienating behaviors" were causing J.S. to behave defiantly in Schweitzer's home, and that she "more often than not" refused to engage with court-ordered parenting coach Lucas.  Schweitzer also alleged that Tran refused to support J.S.'s participation in martial arts instruction.  Schweitzer submitted several documents, including Dr. Vien's 2015 parenting evaluation; a report from his expert, board certified clinical psychologist Dr. Tyson Bailey; a declaration from his parenting advisor, Martha Wakenshaw; and a declaration

3

from his former fiancé, Misty Porter. Schweitzer also provided some of the e-mails he exchanged with Tran and Lucas and call logs documenting the frequency and duration of J.S.'s communication with each parent. Finally, Schweitzer requested the court modify the 2016 child support order.

In response, Tran asserted that the issues Schweitzer raised in his current petition to modify the parenting plan were the same issues raised when he sought modification in 2015, and that there had been no substantial change in circumstances since then. She also asserted that J.S. is thriving in her care and that Schweitzer's allegations of parental alienation are false. Tran also opposed Schweitzer's petition to modify the child support order.

On February 19, 2020, following a hearing pursuant to RCW 26.09.270, a superior court commissioner ruled that there was adequate cause to hold a trial on Schweitzer's petition to modify the parenting plan. The commissioner found that the "changed circumstances that have arisen since the entry of the parenting plan include the child's behavior in the father's home and the continued discord between the parents which could have been addressed through work with Anne Lucas," and that "[t]he lack of engagement of the mother combined with the child's behavior in the father's home give rise to something more than prima facie allegations."

Tran moved for revision of the commissioner's order. On March 13, 2020, a superior court judge denied revision and adopted the commissioner's findings of fact and conclusions of law determining there was adequate cause to hold a trial. The court also appointed parenting evaluator Lynn Tuttle.

4

Tran then moved for discretionary review of the adequate cause determination. On June 17, 2020, a commissioner of this court denied Tran's motion. Although Tran argued that Schweitzer based his current petition on the same facts that the parties previously litigated in Oregon in 2015 and 2016, the commissioner ruled that "the evidence presented by the father addressed matters occurring after the 2016 modified parenting plan," and "nothing in the Oregon court orders precludes the father from petitioning for modification based on current evidence."

On January 15, 2021, Tuttle completed her parenting evaluation and issued her report. Tuttle concluded that there were no grounds for a major modification of the parenting plan. Tuttle opined that Schweitzer "exaggerated issues and provided some misleading information in his attempt to fit into the required standard for a modification." Tuttle noted that Schweitzer claims the living situation at Tran's home is detrimental, yet he "is comfortable with the child residing [there] half of the time." She also pointed to extensive evidence showing that J.S. is "doing very well academically and emotionally" and that Schweitzer and J.S. "have a good relationship." She noted that contrary to Schweitzer's assertion that Tran is unsupportive of J.S.'s desire to participate in martial arts, J.S. clearly told Tuttle that he "does not like" martial arts training and "wants a break."

Tuttle found "no data to indicate Dr. Tran has tried to negatively influence the child's view of Dr. Schweitzer." Rather, she opined that conflict between Schweitzer and J.S. mostly revolved around martial arts and that Schweitzer's

5

parenting techniques and J.S.'s developmental age were causing J.S. to be more defiant toward his father. Tuttle did express concern that Tran "refused to participate with Ms. Lucas, and that she is quite rigid in her boundaries" with Schweitzer. But Tuttle concluded that "there is not sufficient data to support an abusive use of conflict restriction against" Tran.

Although Tuttle noted that her investigation "raised significant concerns about Dr. Schweitzer excessively communicating with and pressuring Dr. Tran," she also declined to recommend an abusive use of conflict restriction against him. Tuttle recommended that Tran "work with her therapist regarding being more flexible, as that will relieve stress on the child." She also recommended a "Why Hold Onto Anger" class for both parents and therapy for J.S. To reduce conflict, Tuttle recommended a set summer residential schedule as a minor modification of the 2016 parenting plan, with J.S. spending the first and last weeks of summer with Tran and each parent alternating the remaining summer weeks.

A bench trial on Schweitzer's petition to change the parenting plan and request to modify child support took place July 19 to 22, 2021. The trial court heard testimony from Schweitzer, Tran, Schweitzer's parenting advisor Wakenshaw, his clinical psychologist experts Dr. Daniel Rybicki and Dr. Bailey, Tran's clinical psychologist expert Dr. Marnee Milner, the co-owner of J.S.'s martial arts program, J.S.'s pediatrician, J.S.'s preschool teacher, the mothers of two of J.S.'s classmates, and Schweitzer's mother, brother, and girlfriend. Tuttle also testified and provided her recommendation.

6

On August 13, 2021, the trial court entered a final order and findings of fact and conclusions of law on Schweitzer's petition. It denied Schweitzer's request for a major modification of the parenting plan, finding that Schweitzer "failed to meet his burden to show a substantial change in circumstance" and that J.S.'s "present environment with his mother is not detrimental to the child's physical, mental or emotional health." The court also found Tuttle's testimony credible:

> This court concurs with Ms. Tuttle's assessment that . . . Dr. Schweitzer has exaggerated issues and provided some misleading information in his attempt to fit into the required standard for a modification action, in continuations of his attempts since 2015 to change the parenting plan to an equal schedule.

The court further found "little evidence to support Mr. Schweitzer's ongoing allegations of 'alienation' against Ms. Tran," noting that Schweitzer, his girlfriend, and his parents "all report that [J.S.] is happy to spend time with Mr. Schweitzer and that they have a good relationship." It also found:

> Credible testimony from Ms. Tran, Ms. Tuttle, and third parties offered by Ms. Tran at trial, as well [as] the documentary evidence admitted, showed that Ms. Tran has provided a safe and healthy home environment for the child, and the child has excelled academically, socially, emotionally, and in his extracurricular activities.

Finally, the court found that J.S.'s martial arts program "presented mixed evidence as to its downsides and benefits" and that it was "not persuaded that it is in the boy's best interests to discontinue the program," but that "the parents risk turning this . . . into something toxic if they keep up their current bickering."

The court did, however, adopt Tuttle's recommendation for a minor modification to the summer schedule, which reduced Schweitzer's residential

7

time by one week.  It also found grounds to modify nonresidential aspects of the 2016 parenting plan as Tuttle recommended, including "[t]reatment interventions for the parties and the minor child."  The court also approved changing child support because the parties now both reside in Washington and their incomes changed.  On reconsideration, the court reduced Schweitzer's monthly child support obligation based on the standard calculation.

The trial court granted Tran's request for an award of all her attorney fees and costs.  Following a post-trial hearing, the court awarded Tran a total of $190,424.54 based on the doctrine of intransigence.  The court denied Schweitzer's motion for reconsideration.

Schweitzer appeals.

ANALYSIS

Major Modification

Schweitzer argues that the trial court erred in failing to find grounds for a major modification of the 2016 parenting plan.  We disagree.

We review a trial court's order on modification of a parenting plan for an abuse of discretion.  In re Marriage of McDole, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993).  A trial court abuses its discretion if the decision is manifestly unreasonable or based on untenable grounds.  In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).  A court bases its decision on untenable grounds if the record does not support the factual findings, the court used an incorrect standard, or the facts do not meet the requirements of the standard.  In re Marriage of Mansour, 126 Wn. App. 1, 8, 106 P.3d 768 (2004).

We review the trial court's findings to determine whether substantial evidence supports them. Merriman v. Cokeley, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). Evidence is substantial if it is sufficient to persuade a fair-minded, rational person of the declared premise. Id. The party challenging a finding of fact bears the burden of showing that substantial evidence does not support the finding. Nordstrom Credit, Inc. v. Dep't of Revenue, 120 Wn.2d 935, 939-40, 845 P.2d 1331 (1993). We do not reweigh the evidence to determine if we would reach a different conclusion than the trial court. In re Marriage of McNaught, 189 Wn. App. 545, 561, 359 P.3d 811 (2015). We review conclusions of law de novo. Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).

Chapter 26.09 RCW strictly controls a trial court's authority to modify a parenting plan. In re Marriage of McDevitt, 181 Wn. App. 765, 769, 326 P.3d 865 (2014). RCW 26.09.260 "establishes a strong presumption against modification and in favor of continuity." In re Marriage of Cardwell, 16 Wn. App. 2d 90, 96, 479 P.3d 1188 (2021). A party seeking modification must first produce an affidavit showing adequate cause before the court will permit a full hearing. RCW 26.09.270; In re Marriage of Zigler, 154 Wn. App. 803, 809, 226 P.3d 202 (2010). The court may modify a parenting plan only if it finds that

> (1) a substantial change occurred in circumstances as they were previously known to the court, (2) the present arrangement is detrimental to the child's health, (3) modification is in the child's best interest, and (4) the change will be more helpful than harmful to the child.

Zigler, 154 Wn. App. at 809 (citing RCW 26.09.260(1), (2)(c)).

9

Schweitzer argues that Tran's continuing overt hostility and refusal to engage in good faith with the court-appointed parenting coach amounted to a substantial change in circumstances. He contends that the Oregon court premised the 2016 parenting plan on the expectation that Tran would lessen her hostility toward him. He further contends that the trial court abused its discretion in focusing more on the similarity of his requested relief (an equal residential schedule) and the issues he raised (Tran's alienating behavior) than on the facts he presented, which all arose after the 2016 parenting plan.

A substantial change must be a "bona fide change in circumstances." In re Marriage of Pape, 139 Wn.2d 694, 716, 989 P.2d 1120 (1999). "[I]t is in the trial court's broad discretion to determine whether [a] change [in circumstances] should be characterized as substantial." In re Marriage of Tomsovic, 118 Wn. App. 96, 106, 74 P.3d 692 (2003). The court must base a substantial change finding on facts that "have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan." RCW 26.09.260(1). "A material change in condition can be deemed to occur where a provision in the original decree anticipates cooperation and that cooperation is not forthcoming." Selivanoff v. Selivanoff, 12 Wn. App. 263, 265, 529 P.2d 486 (1974).

Here, the trial court's findings did not address Schweitzer's claim that Tran failed to cooperate in good faith with Lucas, the parenting coach. But conflict and lack of cooperation between parents does not generally constitute a substantial change in circumstances unless it directly impacts the child. See In re Marriage of Stern, 57 Wn. App. 707, 716, 789 P.2d 807 (1990) (stating that "[c]hanges in

the conditions or circumstances between [the parents] would have been of little moment had they not affected the welfare of the children"). Regardless of whether Tran cooperated with the parenting coach, the trial court found that Tran "provided a safe and healthy home environment," that J.S. "has excelled academically, socially, emotionally, and in his extracurricular activities," and that the "harm likely to be caused by a change of environment is not outweighed by any advantage of a change to the child." Moreover, the court rejected Schweitzer's allegations against Tran of "alienation" and noted that Schweitzer and J.S. "have a good relationship." Those findings are amply supported by substantial evidence in the record. The trial court did not abuse its discretion in finding that Schweitzer did not establish a substantial change in circumstances.

Schweitzer also argues that the trial court erred in finding that J.S.'s present environment with his mother is not detrimental just because J.S. is doing well and there are no present signs of alienation. He contends that Tran's continuing hostility was harmful and that J.S. "need not be actually alienated before an environment that creates a risk of alienation can be found detrimental."

As Schweitzer correctly notes, "evidence of actual damage is not required" to establish alienation; "[r]ather, the required showing is that a danger of psychological damage exists." In re Marriage of Burrill, 113 Wn. App. 863, 872, 56 P.3d 993 (2002). In Burrill, the mother argued that the trial court erred in imposing parenting plan restrictions because there was no evidence that she had alienated the children from their father. Id. at 871. The appellate court rejected this argument and held that the mother's abusive use of conflict, including her

11

unsubstantiated reports that the father abused alcohol and drugs and her misleading claims of sexual abuse, created a danger of psychological damage to the children. Id. at 870, 872.

But here, the trial court found "little evidence to support Mr. Schweitzer's ongoing allegations of 'alienation' against Ms. Tran." Substantial evidence supports this finding. Parenting evaluator Tuttle found "no data to indicate Dr. Tran has tried to negatively influence the child's view of Dr. Schweitzer." And multiple sources confirmed that J.S and Schweitzer share a close bond, which the court found credible. Even though Schweitzer presented testimony that conflicted with these observations, we do not review a trial court's credibility determinations on appeal. In re Marriage of Eklund, 143 Wn. App. 207, 212, 177 P.3d 189 (2008). The trial court did not err in finding that Schweitzer failed to demonstrate that the residential schedule established in the 2016 parenting plan was detrimental to J.S.

Minor Modification

Schweitzer also challenges the trial court's decision to modify the summer residential schedule to reduce his residential time with J.S. by one week. Neither party petitioned for this modification. However, Tuttle believed that the summer schedule in the 2016 parenting plan created conflict because it required Schweitzer and Tran to agree on vacations and how to divide the summer break. So, for "simplicity" and to reduce conflict, Tuttle recommended that J.S. reside with Tran during the first and last weeks of summer and that each parent have alternating weeks with J.S. for the remaining summer weeks. Tran then asked

the court to adopt Tuttle's recommendation, which it did.  But as a result, Schweitzer lost approximately seven days of summer residential time with J.S.

Schweitzer does not dispute that establishing a set summer schedule benefits J.S. by reducing parental conflict.  But he contends that even if Tran effectively amended her pleadings by asking the court to adopt Tuttle's recommendation, the trial court erred in doing so without making the required findings under RCW 26.09.260(5) to warrant reducing his residential time.  We agree.

RCW 26.09.260(5) permits a trial court to adjust aspects of a parenting plan through a minor modification of the residential schedule "upon a showing of a substantial change in circumstances of either parent or of the child."  A minor modification must not involve a change of primary residence or more than 24 full days per year.  RCW 26.09.260(5)(a).  Here, the trial court's only finding on the minor modification was that "[t]he requested change will impact the children's schedule on fewer than 25 full days a year."  The court did not address whether there was a substantial change in circumstances as the statute requires.[1]  And although Tuttle's report supports a finding that establishing a set summer schedule is in J.S.'s best interest, the report is silent as to why it is in J.S.'s best interest to reduce Schweitzer's residential time.  Accordingly, we vacate the modification to the summer residential schedule and remand for entry of findings.

---

[1] As discussed above, the trial court found no change in circumstances supporting major modification.

13

Attorney Fees at Trial

Schweitzer argues that the trial court erred in awarding Tran all her attorney fees and costs based on the doctrine of intransigence.

An award of attorney fees and costs is within the discretion of the trial court, and we review the court's decision for abuse of that discretion. In re Marriage of Crosetto, 82 Wn. App. 545, 563, 918 P.2d 954 (1996); In re Marriage of Wixom, 190 Wn. App. 719, 725, 360 P.3d 960 (2015). The party challenging the award must establish that the court exercised its discretion in a manner that was "clearly untenable or manifestly unreasonable." In re Marriage of Knight, 75 Wn. App. 721, 729, 880 P.2d 71 (1994).

A court may award attorney fees and costs in a civil action if a statute, an agreement of the parties, or a recognized equitable ground authorizes the award. In re Marriage of Greenlee, 65 Wn. App. 703, 707, 829 P.2d 1120 (1992). A trial court may also "consider whether additional legal fees were caused by one party's intransigence and award attorney's fees on that basis." Id. at 708. Because attorney fees and costs based on intransigence are an equitable remedy, the court may award fees regardless of the parties' financial resources. In re Marriage of Mattson, 95 Wn. App. 592, 604, 976 P.2d 157 (1999).

> Determining intransigence is necessarily factual, but may involve foot-dragging, obstructing, filing unnecessary or frivolous motions, refusing to cooperate with the opposing party, noncompliance with discovery requests, and any other conduct that makes the proceeding unduly difficult or costly.

Wixom, 190 Wn. App. at 725.

14

Here, after the bench trial, the court found:

> [Tran] should be awarded her . . . reasonable attorney fees and costs associated with [Schweitzer's] modification action based on the largely repetitive nature of this case and his prior attempt to modify the parenting plan in 2015.  This lawsuit showed little change in [Schweitzer]'s prior evidence and position.

Following a hearing on Tran's post-trial motion for attorney fees and costs, the court found:

> [Tran] should be awarded fees and costs under the doctrine of intransigence.  The court finds that examples of [Schweitzer]'s intransigence include, but are not limited to, those examples cited in [Tran]'s motion and trial brief, but in essence the intransigence here is the largely duplicative nature of this case from Dr. Schweitzer's prior litigation attempts.

The court then awarded Tran a total of $190,424.54 in attorney fees and costs, including fees incurred before Schweitzer filed his petition to modify the parenting plan and fees related to child support.

Tran argues that the trial court properly awarded all her fees because they arose entirely from Schweitzer's persistent and stubborn refusal to accept the 2016 parenting plan.  She contends that substantial evidence supports the court's finding that Schweitzer showed little change in his prior evidence and position and emphasizes that Schweitzer did not prevail at trial.  We disagree.

The trial court's findings do not support a conclusion that the entire action was intransigent because the claims were "duplicative."  Schweitzer based his petition for modification on facts that occurred after the Oregon court issued the parenting plan, including Tran's refusal to cooperate with parenting coach Lucas, J.S.'s behavior in Schweitzer's home, the parties' conflict over J.S.'s participation in martial arts, the frequency and duration of Schweitzer's calls with J.S., and

15

Schweitzer's move to Washington. And Schweitzer met his threshold burden to establish adequate cause for a full hearing on his petition.[2] At minimum, adequate cause means "evidence sufficient to support a finding on each fact that the movant must prove in order to modify." In re Marriage of Lemke, 120 Wn. App. 536, 540, 85 P.3f 966 (2004). The primary purpose for the threshold adequate cause requirement is to prevent movants from harassing nonmovants by obtaining a useless hearing. In re Marriage of Adler, 131 Wn. App. 717, 724, 129 P.3d 293 (2006). The fact that Schweitzer ultimately failed to establish grounds for a major modification of the parenting plan following a bench trial on his claims does not alone render the motion frivolous or the movant intransigent.

Tran asserts that Schweitzer "misled" the court that determined adequate cause by providing "cherry-picked" e-mails to "serve up the false narrative he created with his manipulation of Lucas." But at the adequate cause hearing, Tran cited examples of her own correspondence with Lucas in support of her argument that Schweitzer was misusing the parenting coach. The commissioner rejected her argument. And the trial court made no finding that Schweitzer deceived the commissioner into issuing an order of adequate cause. We reverse the trial court's determination that the duplicative nature of Schweitzer's motion warranted a finding of intransigence.

The trial court also concluded Schweitzer was intransigent based on his conduct during trial. But it entered no findings in support of its conclusion.

---

[2] As discussed, a superior court judge and a Court of Appeals commissioner upheld the superior court commissioner's adequate cause finding.

Instead, it referred to "examples" of intransigence "cited in [Tran]'s motion and trial brief."

The reference to Tran's trial brief is insufficient to uphold an award of attorney fees and costs based on intransigence. Trial courts must exercise their discretion to award fees on articulable grounds and enter findings and conclusions to make an adequate record to review the award. Mahler v. Szucs, 135 Wn.2d 398, 435, 957 P.2d 632 (1998). And the court should segregate the fees arising from intransigence from those incurred for other reasons. Crosetto, 82 Wn. App. at 565. Segregation is not required only where the spouse's " 'bad acts permeated the entire proceeding.' " In re Marriage of Bresnahan, 21 Wn. App. 2d 385, 411, 505 P.3d 1218 (2022) (quoting In re Marriage of Sievers, 78 Wn. App. 287, 312, 897 P.2d 388 (1995)). Accordingly, we vacate the award of attorney fees and costs to Tran and remand for the trial court to make specific findings on Schweitzer's conduct at trial amounting to intransigence. The court must also segregate the fees arising from intransigence from those incurred for other reasons.

<u>Attorney Fees on Appeal</u>

Tran seeks an award of attorney fees and costs on appeal based on Schweitzer's intransigence. "Where an intransigent spouse's appeal 'amounts to little more than an effort to carry on with the same efforts which caused [them] to lose credibility with the trial court,' the appellate court may award attorney fees based on intransigence." Bresnahan, 21 Wn. App. 2d at 413[3] (quoting Sievers,

---

[3] Alteration in original.

78 Wn. App. at 312).  A party's intransigence below may also support an award of attorney fees on appeal.  In re Marriage of Mattson, 95 Wn. App. 592, 606, 976 P.2d 157 (1999).  But Schweitzer's appeal is not frivolous, and he was not intransigent for pursuing it.  We deny Tran's request for fees on appeal.

We affirm the trial court's finding that Schweitzer did not demonstrate a basis for a major modification of the parenting plan.  But we reverse and vacate the modification to the summer residential schedule and remand for the trial court to enter findings in support of its decision.  And we reverse and vacate the attorney fees and costs awarded to Tran based on Schweitzer's intransigence and remand for the trial court to enter findings in support of its award consistent with this opinion.

Brennan, J.

WE CONCUR:

Birk, J.